[No. 8107-1-I. Division One. October 26, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID EDWARD WARRINER, *Appellant.*

*Mark Leemon* of *Seattle–King County Public Defender Association* and *John G. Ziegler,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Andrew Hamilton, Deputy,* for respondent.

DURHAM, J.—The defendant, David Edward Warriner, appeals from the trial court's order enhancing his sentence under the "firearm" statute, RCW 9.41.025, and the "deadly weapon" statute, RCW 9.95.040, and from his conviction as a habitual criminal.

On March 26, 1979, Warriner pleaded guilty to assault in the second degree and negligent homicide while armed with a handgun. The plea judge entered findings that Warriner was armed with a deadly weapon and with a firearm at the time of the commission of the underlying offenses.

By supplemental information, Warriner was charged with being a habitual criminal. After a trial to the court, he was found to be a habitual criminal based upon 1971 and 1974 convictions, entered after pleas of guilty, in Snohomish County. The trial court found that the 1971 and 1974 guilty pleas were knowingly, voluntarily and intelligently made

within the constitutional requirements of *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969).

■ Warriner first contends that because possession of a weapon was a necessary element of second degree assault, enhancement of the penalty under the firearm and deadly weapon statutes was improper under the rule of *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978), and violated the double jeopardy clause of the United States and Washington State Constitutions. This argument was considered and rejected in *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979), which Warriner urges us to disregard. We have no authority to ignore controlling precedent, and decline to do so. We are bound by the Supreme Court's holding in *Foster* and affirm the findings and sentence enhancement under both the firearm and deadly weapon statutes.

Next, Warriner attacks the habitual criminal finding and the judgment and sentence imposed thereon, claiming defects in the guilty pleas upon which the underlying convictions were based. Specifically, he argues that there was insufficient evidence that he was advised of: (1) his privilege against self–incrimination, (2) the elements of the underlying offenses, and (3) his right to appeal. He bases his challenge of the habitual criminal finding on *Boykin v. Alabama, supra,* and *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980).

The record establishes that Warriner knew and understood the elements of the underlying offense and his appeal. His only serious attack on his prior convictions concerns the privilege against self–incrimination.

The records made at both hearings at which Warriner's two guilty pleas were taken indicate that the judge never specifically informed Warriner of his right to remain silent. Nor do the two statements of defendant on plea of guilty reflect specific advice of this right. Warriner contends that this defect invalidates both prior convictions for purposes of the habitual criminal proceeding. In so doing, he interprets *State v. Holsworth, supra,* as requiring specific enumeration of the three rights mentioned in *Boykin.*

■ Warriner's interpretation of the *Holsworth* case is incorrect. As we pointed out in *State v. Chervenell,* 28 Wn. App. 805, 626 P.2d 530 (1981), *Holsworth* does not require that a defendant entering a guilty plea be specifically advised of all three rights enunciated in *Boykin.* Rather, a guilty plea is considered valid if it appears from the record, or from extrinsic evidence if the record is unclear, that the plea was made intelligently and voluntarily, with knowledge of its consequences. *State v. Chervenell, supra* at 809, quoting *Wood v. Morris,* 87 Wn.2d 501, 508, 554 P.2d 1032 (1976); *In re Keene,* 95 Wn.2d 203, 214, 622 P.2d 360 (1980) (Utter, C.J., concurring in part, dissenting in part); *State v. Loux,* 24 Wn. App. 545, 604 P.2d 177 (1979); *State v. Lewis,* 16 Wn. App. 132, 553 P.2d 127 (1976). Thus, the fact that Warriner may not have received specific enumeration of the *Boykin* rights does not necessarily mean that the 1971 and 1974 guilty pleas and resulting convictions may not be used for purposes of the habitual criminal statute. We are left to determine from the record if those guilty pleas were made intelligently and voluntarily.

At the habitual criminal trial, the trial court had before it the statement of defendant on a plea of guilty and the transcript of proceedings for both guilty pleas. The statements informed Warriner that he had a right to counsel, to a jury trial, and to be confronted by witnesses. The statements indicated that he entered the pleas freely and voluntarily, and that he understood the nature of the charge in each respective information. Warriner was questioned extensively by each court upon entry of the pleas concerning the content of the statements and Warriner's understanding thereof. Thus, the trial court had direct evidence that Warriner intelligently and voluntarily entered his guilty pleas in both 1971 and 1974.

In addition, the trial court heard testimony at the habitual criminal proceeding regarding the earlier pleas, which supports the conclusion that the guilty pleas were valid. Warriner's attorney in the 1971 case stated that he normally explained all pertinent rights to his clients, and that

he carefully discussed the consequences of the decision to plead guilty with Warriner. Although 8 years had passed since entry of the plea, he said that he was satisfied that the plea was entered according to constitutional standards. Warriner's own testimony indicated that his decision to plead guilty was made intelligently and voluntarily. Warriner admitted having been given his *Miranda* rights prior to confession to the 1974 burglary, and those rights were read to him in 1971 as well.

The trial court, after hearing the evidence and considering the testimony, stated that there was clear and convincing evidence that the plea was knowingly, intelligently, and voluntarily made within the meaning of *Boykin*.[1] After reviewing the entire record we agree with the trial court and conclude that, after viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that guilty pleas were made according to constitutional standards beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).

Affirmed.

JAMES, C.J., concurs.

RINGOLD, J. (dissenting)—The majority glosses over the factors necessary to a conclusion that the pleas were made

---

[1]The trial court concluded as follows:

> I suspect that no single point that this Court would rely on in this case is itself persuasive, but in taking all of these factors together I'm left with really about as clear a feeling as I think I could have, that this knowing and voluntary plea existed in each of these two cases.

Warriner correctly points out that the State has the burden of proving the validity of the guilty pleas beyond a reasonable doubt. *State v. Holsworth*, 93 Wn.2d 148, 607 P.2d 845 (1980). Yet even if the standard applied by the trial court was the "clear and convincing" test, we find no error. In this context, "clear and convincing" must be equated with beyond a reasonable doubt. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 126 n.3, 615 P.2d 1279 (1980); *Wood v. Morris*, 87 Wn.2d 501, 554 P.2d 1032 (1976); *In re Levias*, 83 Wn.2d 253, 517 P.2d 588 (1973). It appears that the result would not have been materially different had the judge enunciated the "reasonable doubt" standard, and any error would be harmless. *State v. Rogers*, 83 Wn.2d 553, 520 P.2d 159, *cert. denied*, 419 U.S. 1053, 42 L. Ed. 2d 650, 95 S. Ct. 633 (1974).

intelligently and voluntarily with knowledge of the consequences. The majority points to no evidence in the record to establish that Warriner was aware of and waived his right to remain silent at trial. I therefore dissent.

## HABITUAL CRIMINAL CONVICTION

In *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), the court held that a defendant must be apprised of the nature of the offense and the consequences of pleading guilty in order to establish the plea as knowing, intelligent and voluntary. The defendant must be aware of his constitutional right to remain silent, to confront accusers and to a jury trial, and he must know that a guilty plea waives those rights. The State has the burden of proving beyond a reasonable doubt that the prior conviction was based on a valid guilty plea. *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980).

Warriner attacks the habitual criminal finding and the judgment and sentence imposed thereon on the grounds that there was insufficient evidence at the time of his prior pleas he was aware of (1) his privilege against self–incrimination; (2) the elements of the offenses; and (3) the right to appeal. I conclude that there was not substantial evidence to support a finding beyond a reasonable doubt that Warriner was aware of the privilege against self–incrimination. I therefore would hold that the State did not prove that the guilty pleas were knowingly, intelligently and voluntarily made within the meaning of *Boykin* and *Holsworth.*[2]

Subsequent to the trial here, the Supreme Court in *State v. Holsworth, supra* at pages 152–53, held:

> We hold that the defendant in a habitual criminal proceeding can attack the use of convictions based on

---

[2]The record does provide substantial evidence upon which the trial court could find by clear and convincing evidence that Warriner was advised of the elements of the offense and of his right to appeal. I disagree, however, with the majority's conclusion that proof by "clear and convincing evidence" is equivalent to proof beyond a reasonable doubt. *See San Juan County v. Ayer,* 24 Wn. app. 852, 858 n.1, 604 P.2d 1304 (1979).

pre-*Boykin* guilty pleas and that the State has the burden of proving *beyond a reasonable doubt that the prior conviction was based on a valid guilty plea. . . .*

. . . *Boykin v. Alabama* . . . thus established the rule that the pleading defendant *must be apprised of the nature of the offense and the consequences of pleading guilty,* in order for the plea to be accepted as knowing, intelligent and voluntary.

. . . *The defendant must also be apprised of his constitutional rights to remain silent,* to confront accusers, and to jury trial. He *must be made aware that his guilty plea necessarily waives those rights.*

(Citations omitted. Italics mine.)

The majority states that *Holsworth* does not require specific advice of each right enunciated in *Boykin*. I do not quarrel with this holding[3] but I cannot accept the majority's elimination of the requirement that the State prove defendant's *awareness* of those rights. *State v. Holsworth, supra.* In so holding, the majority relies on wholly irrelevant authority. The cases cited involve direct appeals or personal restraint petitions in which the defendant asks the court to reverse or set aside the judgment itself.[4] Here the

---

[3]For my part, I would favor a change in the rule excusing trial courts from any obligation to advise defendants of their Fifth Amendment privilege. In *Miranda v. Arizona,* 384 U.S. 436, 468–69, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1977), the Supreme Court, when requiring law enforcement officers to advise suspects of their pretrial rights, stated:

The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact.

(Footnote omitted.)

Such a rule, prospectively applied to guilty plea proceedings would greatly reduce the number of difficult appeals requiring this court continually to review the sufficiency of the evidence of advisement and waiver, and at the same time protect defendants' rights.

[4]*Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976); *In re Keene,* 95 Wn.2d 203, 622 P.2d 360 (1980); *State v. Loux,* 24 Wn. App. 545, 604 P.2d 177 (1979). *State v. Lewis,* 16 Wn. App. 132, 553 P.2d 127 (1976). I, of course, disagree with

judgment is not under attack. Its admissibility is the issue, and unlike the cases cited by the majority, the State must prove the validity of the prior pleas beyond a reasonable doubt.

Since both pleas were entered prior to the decision of the court in *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976), the State presented extrinsic evidence in seeking to establish a record which would sustain the constitutional validity of the pleas. The lawyers who represented Warriner in 1971 and 1974 testified, and documentary evidence consisting of the information and the defendant's statements on plea of guilty were considered by the trial court. The State contends that these provide substantial evidence beyond a reasonable doubt that Warriner was aware of his constitutional rights.

The statement of defendant on a plea of guilty signed on September 22, 1971, omits any reference to the right to remain silent at trial. The statement of defendant on his plea entered on the 12th day of March 1974 is also devoid of any reference to the right to remain silent at trial. The verbatim reports of proceedings from 1971 and 1974 also have no reference to the constitutional right to remain silent and its waiver. The validity of these prior pleas, therefore, must be found in the extrinsic evidence heard by the trial court.

## 1971 CONVICTION

The attorney who represented Warriner in 1971 testified that the focus of his discussion with Warriner was his feeling that a plea was in Warriner's best interest because probation would permit him to enter the army. The attorney indicated that Warriner had just turned 18 and was immature. He had some question as to how much the defendant understood of the technicalities of his defense because in their discussions, Warriner constantly brought up irrelevant matters. He testified:

the court's reliance on these cases in *State v. Chervenell,* 28 Wn. App. 805, 626 P.2d 530 (1981).

A He [Warriner] certainly understood that there was this strong possibility of going to prison, and he understood what he had done, breaking and entering, and having the drugs.

. . .

A The defendant was very concerned, to me, about things that were totally irrelevant. For example, he sent me a very serious letter asking me to do anything I could to bring him a peanut butter sandwich in jail, and asking me to bring him candy, like a little kid would. He'd ask me when we'd have these discussions, I'd be talking about whether we should have a jury in a case like this or not, or some point of strategy, and he'd be all concerned because the insurance wasn't being paid on his car. I don't mean this in a facetious manner. I have to wonder how much, in a situation like that, how much does a person grasp.

. . .

Q Was it your practice as an attorney to permit a person who didn't understand the nature of the plea to enter a plea of guilty?

A Oh, he had to understand the nature of the plea.

Q And were you satisfied that the plea was appropriately entered in accordance with constitutional standards?

A Oh yes, I don't think there's any question there.

Warriner testified that he was not informed by anyone that if he chose to go to trial he could not be compelled to take the stand to testify. He stated:

A Yeah. I thought you had to go up and testify. I thought you did. So when I went to plead guilty, I thought they could always call you up to testify.

. . .

Q Mr. Warriner, in 1971, before entering your plea of guilty to the charge of burglary, did anyone advise you that you had a right to appeal if you chose to go to trial?

A I knew I had the right to appeal. I think my lawyer told me I had a right to appeal if I went to trial, yeah. If I went to trial, I had the right to appeal.

Q Now, before you entered your plea to the charge of burglary in 1971, did anyone inform you that by entering that plea you gave up the right to appeal?

A It was a long time ago. Mostly what I remember is, I

remember—I thought I had to testify. I remember that. I talked to the lawyer and everything.

On cross–examination, Warriner testified further about the 1971 conviction:

A He didn't force me. We discussed what was the best avenue, you know, they'd just call me up on the stand and say did you do this and I'd say yeah or say no, they'd get me for perjury. I guess they've got the Fifth Amendment deal where you can plead the Fifth Amendment, and I guess that's the same thing as saying I'm guilty, so I figured I'd go for the guilty plea.

I cannot say from this reference to Fifth Amendment rights that Warriner knew he had a right not to incriminate himself at trial. If the testimony proves anything, it shows that Warriner had a misapprehension that he would have to take the stand and in the presence of the jury refuse to testify. The other evidence cited by the majority is also insufficient. Prior advice of *Miranda* rights is irrelevant to the issue of knowledge of a right at trial. The conclusionary testimony by Warriner's attorney cannot sustain the State's burden of proving Warriner's awareness of a specific constitutional right. I cannot accept the majority's apparent conclusion that knowledge of all other *Boykin* rights permits an inference of an awareness of the right to remain silent at trial. I cannot say "after viewing the evidence [in the light] most favorable to the State, *any rational trier of fact* could have found the essential elements [of the prior valid convictions] *beyond a reasonable doubt." State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980).

### 1974 CONVICTION

The extrinsic evidence concerning the 1974 conviction added nothing to the inadequate record of the plea. The testimony of Warriner's 1974 attorney is devoid of any facts that establish the basis for finding that Warriner was aware of his right to remain silent. His testimony affirmatively establishes that Warriner did not obtain such knowledge from him.

Q Was it your practice to advise a client of the rights he

was foregoing by entering a plea of guilty?

A  *It was my practice to go over with the client the defendant's statement on plea of guilty.* That was usually gone over with the client prior to the entry of the plea of guilty, sometimes the day before, sometimes the day of plea of guilty.

To the best of my recollection, *my general practice was to confine my explanation of the rights, and those rights that would be foregone to those rights enumerated on the defendant's statement on a plea of guilty.* There were two or three different forms of defendant's statement on a defendant's plea of guilty during my five years with the public defender's office in Snohomish County.

(Italics mine.)

If *Holsworth* and *Green* mean anything, they must require proof of the defendant's awareness of each *Boykin* right before courts can say beyond a reasonable doubt that the convictions are valid and admissible. I would strike the habitual criminal finding and remand for resentencing.

Reconsideration denied December 16, 1981.

Review by Supreme Court pending September 10, 1982.