[No. 50135–1.   En Banc.   June 21, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. EVERETT E. OSBORNE, ET AL, *Petitioners.*

*Everett* and *Mary Osborne, pro se,* and *Paul M. Acheson,* for petitioners.

*Norm Maleng, Prosecuting Attorney,* and *Linda G. Walton, Senior Deputy,* for respondent.

PEARSON, J.—Petitioners Everett and Mary Osborne challenge their pleas of guilty to second degree felony murder, alleging that they were not made aware of the nature of the charges against them, that a sufficient factual basis for their pleas was not established, that their pleas were involuntary, and that they did not receive effective assistance of counsel. The Court of Appeals upheld the trial court's denial of petitioners' motion to withdraw their guilty pleas. We affirm.

I

Fifteen–year–old Shelly Lynn Everett died December 9, 1981, from injuries she received while at the home of her mother, Mary Osborne, and her stepfather, Everett Osborne. The King County Medical Examiner found three categories of traumatic injuries on Shelly's body. First were the blunt impact injuries to Shelly's abdomen. These injuries resulted in the peritonitis which caused her death. The second category included blunt impact injuries to Shelly's head. These injuries, in the examiner's opinion, were sustained at various times prior to Shelly's death. The third category included several types of trauma to Shelly's torso,

including healing rib fractures.

Petitioners were arrested December 12, 1981, and charged with second degree felony murder. RCW 9A.32-.050(1)(b). The information alleged:

> That the defendants . . . during a period of time intervening between November 13 and December 9, 1981, while committing and attempting to commit the crime of assault in the second degree, and in the course of and in furtherance of said crime and in immediate flight therefrom, did cause the death on or about December 9, 1981, of Shelly L. Everett . . .

In the accompanying affidavit of probable cause, the prosecutor described the autopsy report and various witness statements implicating petitioners, including a statement given to police officers by the Osbornes' nephew, Darren Boline. (Boline was about Shelly's age and also lived with the Osbornes.) Boline said that the Osbornes had beaten Shelly nightly for several weeks prior to her death.

At their omnibus hearing, both defendants were represented by attorney John Rosellini. To avoid any potential conflict of interest, however, Michael Alfieri was retained to represent Mary Osborne. A trial date of January 29, 1982, was scheduled.

On January 22, 1982, defense counsel obtained a continuance, and a new trial date of March 1, 1982, was set. On February 22, 1982, Alfieri obtained a court order authorizing psychiatrist Thomas Goodman to examine Mary Osborne in jail. Goodman's report, dated February 24, 1982, indicated that Mary was depressed, anxious, and fearful of enduring a trial. The report further indicated that Mary had definite suicidal ideation and tendencies. Based on the report's description of Mary's condition, Alfieri moved for another continuance on February 26, 1982. The motion was denied, but trial was reset for March 4, 1982.

Defense counsel interviewed the State's witnesses and submitted the autopsy report to two doctors for independent evaluation. Plea negotiations resulted in a prosecution decision to lower the sentencing recommendation from life

imprisonment to 30 years for Everett Osborne and 20 years for Mary Osborne.

On March 1, 1982, the defendants entered pleas of guilty, stating they were not guilty, but, believing the jury would convict them, wished to take advantage of the prosecution's lower sentencing recommendation. This type of plea has been approved in *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970) and *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976). Attorney Alfieri questioned Mary Osborne at length regarding her understanding of the rights she was waiving by pleading guilty. Attorney Rosellini did the same with Everett Osborne. The court then went through the rights again with each defendant. Both defendants said they understood their rights. Both also acknowledged that they had reviewed the evidence, including the police and autopsy reports, with counsel, and that they were pleading guilty because they felt that they would be found guilty on the evidence. Each defendant stated that the decision to plead guilty was a voluntary act and not induced by threats or promises. The court then asked the prosecutor to "state to both the defendants and counsel the elements of the crime charged." The prosecutor read the defendants the information. The court then accepted both pleas and set a sentencing date.

The Osbornes retained new counsel, Paul Acheson, in May of 1982, shortly before this court disbarred attorney Rosellini (*In re Rosellini*, 97 Wn.2d 373, 646 P.2d 122 (1982)). Acheson immediately filed a motion to withdraw both guilty pleas. In support of this motion, Acheson submitted Dr. Goodman's affidavit describing his examination of Mary Osborne in the King County Jail. Goodman said, in part:

> [U]pon first contact, your affiant learned that she [Mary] was chained to the floor of a cell resembling a dogrun; that the cell was approximately three feet wide and twelve feet long; that her arm was in a restraint where she could neither stand nor make use of the arm in the restraint. . . . [Y]our affiant complained to the staff and

eventually persuaded them to give her back her clothes, but could not convince them to remove the restraints from her arm.

Goodman said that he made these observations the day after Mary entered her guilty plea. Goodman further stated that, to his knowledge, Mary "had been in those restraints for at least one day before, the day of, and two days following her entering a plea of guilty." According to Dr. Goodman, Mary was suffering from "severe depression, confusion and self–destructive tendencies" when she entered her plea. Because of this condition, "she did not have the mental ability to fully appreciate the peril that she was under, nor the ability to effectively assist her counsel in the defense of herself."

Everett Osborne, in support of his motion to withdraw his plea, filed an affidavit which states in part that Mary told him that "if [he] proceeded to go to trial even though she had pled guilty, . . . she would kill herself . . ." Everett also said that Mary had been very depressed, even suicidal, before the two decided to plead guilty.

The motion to withdraw came on before the trial court on May 19, 1982. The court said that it had read Dr. Goodman's report. The court did not, however, address Mary's contention that being held in restraints affected the validity of her plea. The court held only that Mary had "freely and voluntarily" entered her plea. The court came to the same conclusion with respect to Everett's plea, without addressing Everett's assertion that Mary had threatened to kill herself if Everett went to trial. The court therefore denied the defense motion and entered judgments and sentences on both pleas. This appeal followed.

## II

The first issue we address is whether petitioners' guilty pleas are invalid because those pleas were made without "an understanding of the nature of the charge". CrR 4.2(d). Due process requires that a defendant be apprised of the nature of the offense in order for a guilty

plea to be accepted as knowing, intelligent, and voluntary. Real notice of the nature of the charge is "the first and most universally recognized requirement of due process". *Henderson v. Morgan,* 426 U.S. 637, 645, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 85 L. Ed. 859, 61 S. Ct. 572 (1941)). *Accord, In re Keene,* 95 Wn.2d 203, 622 P.2d 360 (1980). At a minimum, "the defendant would need to be aware of the acts and the requisite state of mind in which they must be performed to constitute a crime." 95 Wn.2d at 207 (quoting *State v. Holsworth,* 93 Wn.2d 148, 153 n.3, 607 P.2d 845 (1980)). *Accord, State v. Chervenell,* 99 Wn.2d 309, 318, 662 P.2d 836 (1983).

Petitioners were charged with second degree felony murder. RCW 9A.32.050(1)(b). The state of mind necessary to prove a felony murder is the same state of mind necessary to prove the underlying felony. *State v. Wanrow,* 91 Wn.2d 301, 311, 588 P.2d 1320 (1978). The underlying felony here was second degree assault. There are four alternate ways in which the State can prove second degree assault. One involves poison and is not, given the content of the police and autopsy reports, relevant to this case. RCW 9A.36.020(1)(a). The State could, however, conceivably have proved the underlying assault by any of the three remaining means: knowingly inflicting grievous bodily harm, knowingly assaulting with a weapon or other object likely to produce harm, and knowingly assaulting with intent to commit a felony. RCW 9A.36.020(1)(b) through (d).

Petitioners argue that they were unaware at the time their pleas were taken that the State had to prove the "knowledge" element common to these alternative methods of proving the underlying felony. It is true that petitioners were not specifically advised during the plea proceedings that knowledge is an essential element of the underlying felony of second degree assault. Nevertheless, we are not convinced that petitioners' pleas were made absent an understanding of the nature of the charge.

It is clear from the record that petitioners were, at the

time their pleas were taken, aware of facts gathered by the State from which a trier of fact could easily find the requisite "knowledge". Both petitioners stated during the plea proceedings that they had thoroughly reviewed the State's evidence against them, consisting of witness statements, autopsy report, and photographs. The reports and photographs provided evidence of extremely forceful blows; the witness statements referred to the victim having been "beaten", "struck", and "kicked" on repeated occasions. These words describe acts which are intentional, as opposed to accidental.

More, however, is required of the State than a mere showing that petitioners were made aware of the factual assumptions on which the court and the State were proceeding. Petitioners must have been made aware that the State was required to prove that petitioners "knowingly" inflicted grievous bodily harm upon Shelly. In other words, petitioners must have been made aware of the law as it related to the facts. *State v. Chervenell*, 99 Wn.2d at 319.

Petitioners were made aware, in the instant case, that knowledge was a necessary element of the crime for which they were charged. At the plea hearing, the prosecutor read the information to the petitioners. The information alleged:

> That the defendants . . . during a period of time intervening between November 13 and December 9, 1981, while *committing and attempting to commit the crime of assault* in the second degree, and in the course of and in furtherance of said crime and in immediate flight therefrom, did cause the death on or about December 9, 1981, of Shelly L. Everett . . .

(Italics ours.) It is clear from this language that some sort of knowing, purposeful conduct is contemplated. The word "assault" is not commonly understood as referring to an unknowing or accidental act. Likewise, it is difficult to imagine anyone "attempting to commit" an act unknowingly.

That petitioners understood the significance of the ele-

ment of knowledge is further evidenced by reference in their affidavits and in witness statements to a contemplated defense that Shelly's injuries were the result of an accidental fall.

Thus, we hold that petitioners were made sufficiently aware of the nature of the charge against them.

### III

In addition to requiring that a guilty plea be made "voluntarily, competently and with an understanding of the nature of the charge", CrR 4.2(d) provides that "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

> The factual basis requirement of CrR 4.2(d) does not mean the trial court must be convinced beyond a reasonable doubt that defendant is in fact guilty. "It should be enough if there is sufficient evidence for a jury to conclude that he is guilty."

*State v. Newton,* 87 Wn.2d 363, 370, 552 P.2d 682 (1976) (quoting *United States v. Webb,* 433 F.2d 400, 403 (1st Cir. 1970)). The factual basis required by CrR 4.2(d) must be developed on the record at the time the plea is taken. *In re Keene,* 95 Wn.2d at 210. The factual basis need not be established from the defendant's admissions; any reliable source may be used, so long as the material relied upon by the trial court is made a part of the record. *In re Keene,* 95 Wn.2d 203, 210 n.2, 622 P.2d 360 (1980).

One such "reliable source" which may provide a factual basis for a guilty plea is the prosecutor's factual statement. *State v. Newton, supra* at 369–70. The local rules of King County require that such a statement be provided the court upon the filing of charges. King County Local Criminal Rule 2.2(g)(2)(A). Such a statement was filed in this case, along with the information charging petitioners with second degree murder. The statement filed by the prosecutor was, essentially, a summary of various witness statements (notably that of Darren Boline, who lived with the Osbornes) indicating that petitioners had severely beaten

Shelly, and of the autopsy report. The information contained in the prosecutor's statement provided a sufficient factual basis for the guilty pleas.

Of course, in order for a prosecutor's statement of fact to constitute a factual basis for a guilty plea under CrR 4.2(d), that statement must: (1) be before the court at the time of the plea, and (2) be made part of the record at that time. *In re Keene, supra* at 210.

There is little doubt in the instant case that the prosecutor's affidavit was before the court at the time petitioners' pleas were taken; the affidavit and information were filed in December of 1981, more than 2 months before the date of the guilty plea proceedings. Although the record of the plea proceedings makes no specific mention of the prosecutor's affidavit itself, numerous references are made to the witness statements and autopsy report summarized therein. Both petitioners acknowledged that they had thoroughly reviewed the witness statements, autopsy report, and pictures which were summarized in the prosecutor's statement of fact. Thus, the substance of what was contained in the prosecutor's statement before the court was incorporated into the record of the plea proceedings.

In light of the above, we hold that there was a sufficient factual basis under CrR 4.2(d) for acceptance of petitioners' guilty pleas.

## IV

The next issue we address is whether Everett Osborne should have been allowed, under CrR 4.2(f), to withdraw his guilty plea because the plea was involuntary. CrR 4.2(f) states: "The court shall allow a defendant to withdraw his plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." Osborne claims that he was coerced to plead guilty by his wife's threat to commit suicide if the case went to trial.

The Court of Appeals rejected Everett's argument, reasoning that because "mental pressure from family members . . . is beyond the control of the State", it does not affect

the voluntariness of the plea. *State v. Osborne,* 35 Wn. App. 751, 755, 669 P.2d 905 (1983). The court relied on *State v. Frederick,* 32 Wn. App. 624, 648 P.2d 925 (1982) for this proposition.

This court, however, recently reversed the *Frederick* decision, holding that "coercion may render a guilty plea involuntary, irrespective of the State's involvement." *State v. Frederick,* 100 Wn.2d 550, 556, 674 P.2d 136 (1983). In *Frederick,* we also rejected the State's argument that a defendant's denial of improper influence in open court precludes him or her from claiming coercion at some later time. Such a denial is "highly persuasive" evidence that a plea is voluntary, but it is not "conclusive". 100 Wn.2d at 557.

The burden which a defendant must satisfy in order to withdraw his guilty plea was described in *State v. Taylor,* 83 Wn.2d 594, 596, 521 P.2d 699 (1974):

> Under CrR 4.2(f), adopted by this court, the trial court shall allow a defendant to withdraw his plea of guilty whenever it appears that withdrawal is (1) *necessary* to correct a (2) *manifest injustice, i.e.,* an injustice that is obvious, directly observable, overt, not obscure. . . . Without question, this imposes upon the defendant a demanding standard.

On balance, it does not appear that petitioner has met the burden imposed on him by CrR 4.2(f). It is true that an involuntary plea is an indicator of "manifest injustice". *Taylor,* 83 Wn.2d at 597. However, there is nothing in the record to indicate that Osborne's plea was coerced, except for the bare allegation in his affidavit. Osborne specifically stated, several times during the plea proceedings, that his guilty plea was voluntary and free of coercion. More should be required to overcome this "highly persuasive" evidence of voluntariness than a mere allegation by the defendant. Everett Osborne's motion to withdraw his guilty plea was properly denied.

V

Mary Osborne claims that the motion to withdraw her

guilty plea should have been granted because she was not competent at the time the plea was entered. She argues that the mistreatment she received in the King County Jail, coupled with her apparently unstable mental condition, rendered her plea involuntary. She relies on the affidavit of psychiatrist Thomas Goodman, which indicates that Mary was suffering from a posttraumatic stress syndrome and that she was chained to the floor of her jail cell because of her suicidal tendencies.

The standard in a case such as this is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). In determining the mental condition of the defendant, "[t]he critical period is the time of the entry of the guilty plea." *State v. Ashley,* 16 Wn. App. 413, 416, 558 P.2d 302 (1976). In *State v. Loux,* 24 Wn. App. 545, 604 P.2d 177 (1979), the court stated:

> The trial court is vested with broad discretion in judging the mental competency of every defendant to plead guilty and may make its determination from many things, including the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports, and the statements of counsel.

24 Wn. App. at 548. The *Loux* court also stated that expert opinion testimony, such as Goodman's, is not binding on the trial court. 24 Wn. App. at 548.

In the present case, the trial court specifically found that petitioners' guilty pleas were voluntary. The trial court had ample opportunity to observe petitioners' conduct, appearance and demeanor. Petitioners displayed no evidence of incompetency during the plea proceedings; both of them responded intelligently to thorough questioning regarding their pleas from counsel and from the court. Mary Osborne indicated that she was in full possession of her judgment and that her plea was voluntary. Her plea was made after consultation with defense counsel as a result of the lowered

sentencing recommendation. Mrs. Osborne was no doubt under great stress and possessed of a strong desire to leave the confines of the King County Jail. This does not necessarily mean, however, that withdrawal of her plea was necessary to correct a manifest injustice. CrR 4.2(f). She appears to have been competent enough during proceedings to have entered a voluntary plea; the trial court's denial of Mary's motion to withdraw her plea is sustained.

## VI

Finally, petitioners contend that their pleas should have been withdrawn under CrR 4.2(f) because they did not receive effective assistance of counsel. *See State v. Taylor,* 83 Wn.2d at 597.

The test used to determine whether a criminal defendant was denied effective assistance of counsel is whether, after considering the entire record, it can be said that the accused was afforded an effective representation and a fair trial. *State v. Adams,* 91 Wn.2d 86, 89, 586 P.2d 1168 (1978). If a defense counsel's conduct which is later complained of can be characterized as legitimate strategy or tactics, it does not constitute ineffective assistance. 91 Wn.2d at 90. Tactics cannot serve as a basis for a claim of inadequate representation, unless those tactics would be considered incompetent by lawyers of ordinary training and skill in the criminal law. 91 Wn.2d at 91.

Petitioners claim they received ineffective assistance of counsel because counsel failed to come up with a viable defense or to conduct adequate pretrial investigation. The record indicates, however, that counsel interviewed State witnesses, obtained independent evaluations of the autopsy report, and thoroughly reviewed the evidence with petitioners. In a plea bargaining context, "effective assistance of counsel" merely requires that counsel "actually and substantially [assist] his client in deciding whether to plead guilty." *State v. Cameron,* 30 Wn. App. 229, 232, 633 P.2d 901 (1981).

It appears, in this case, that petitioners' counsel were

merely trying to make the best out of a bad situation by taking advantage of the State's sentence offer. It is doubtful, given the evidence gathered by the State, that such tactics would be considered incompetent by the ordinary criminal lawyer. Thus, petitioners' contentions are without merit on this issue.

The Court of Appeals is affirmed.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and DIMMICK, JJ., and CUNNINGHAM and DORAN, JJ. Pro Tem., concur.