# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 77386-1-I consolidated with |
| | ) | No. 77387-9-I |
| Respondent, | ) | No. 77388-7-I |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| TERRY LANE HOLLIS, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | FILED: June 3, 2019 |

MANN, A.C.J. — Terry Hollis entered a plea agreement to resolve multiple felony charges, but then moved to withdraw the plea agreement claiming his two attorneys were ineffective. After the trial court appointed new counsel and held an evidentiary hearing, the court denied Hollis's motion to withdraw his plea. On appeal, Hollis contends that the trial court's denial was in error. We affirm.

I.

The State charged Hollis with numerous criminal offenses in three separate cases. On September 29, 2015, Hollis broke into a residence and stole two guns. The State charged Hollis with residential burglary, first degree unlawful possession of a firearm, two counts of theft of a firearm, and first degree theft.[1]

---

[1] No. 16-1-00983-9 SEA.

On October 21, 2015, Hollis pawned a television that his brother stole during a burglary on September 30, 2015. The State charged Hollis with first degree trafficking in stolen property.[2]

While investigating the September 2015 burglaries, the Bellevue Police Department got a court order to track Hollis's car using its Global Positioning System (GPS). The GPS tracker placed Hollis's car near the scene of an armed robbery of a pawn shop on February 19, 2019. The State arrested and charged Hollis with first degree robbery and first degree trafficking in stolen property.[3]

Initially, the court appointed Matt Hartman to represent Hollis on all three cases. Hollis later hired private counsel, Gene Piculell, to represent him on the first degree robbery case. Hartman continued to represent Hollis in the other two cases.

Hollis faced 35 years in prison if convicted of all the charges in the residential burglary case.[4] The first degree robbery charge would be a second strike offense. Because of the severity of the charges and lengthy sentencing exposure, Hollis entered a global plea agreement resolving all three cases. Hollis pleaded guilty to first degree trafficking in stolen property, first degree robbery, residential burglary, and theft of a firearm. The State and Hollis agreed to a total sentence of 145 months. In exchange, the State agreed to dismiss a count of first degree trafficking in stolen property, first degree unlawful possession of a firearm, theft of a firearm, and first degree theft. The State also agreed not to add additional counts of first degree unlawful possession of a firearm and theft of a firearm. The United States Attorney's Office also agreed to

---

[2] No. 16-1-00181-1 SEA.
[3] No. 16-1-00681-3 SEA.
[4] No. 16-1-00983-9 SEA.

"forego prosecution of federal charges related to" the three cases charged by the King County Prosecuting Attorney.

Before sentencing, Hollis informed the trial court that he wanted to withdraw his pleas because he felt rushed, scared, and wanted more time and help understanding his discovery. The trial court appointed new counsel, Emily Gause, who filed a motion to withdraw the plea agreement. Hollis claimed that his counsel was ineffective, rendering his plea involuntary.

The trial court held an evidentiary hearing, taking testimony from Hartman, Piculell, and Hollis. The trial court denied Hollis's motion, finding portions of Hollis's testimony not credible, and concluded that Hollis's counsel was effective, his plea was voluntary, and no manifest injustice would result. Hollis appeals.

II.

A denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. State v. A.N.J., 168 Wn.2d 91, 106, 225 P.3d 956 (2010). A court shall allow a defendant to withdraw a guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f). "[A]n involuntary plea is an indicator of 'manifest injustice.'" State v. Osborne, 102 Wn.2d 87, 97, 684 P.2d 683 (1984). A defendant can also show manifest injustice if he received ineffective assistance of counsel before entering a guilty plea. A.N.J., 168 Wn.2d at 109. Ineffective assistance of counsel claims present a mixed question of law and fact and are reviewed de novo. A.N.J., 168 Wn.2d at 109.

To demonstrate ineffective assistance of counsel, the defendant must show "(1) that his counsel's performance fell below an objective standard of reasonableness and,

if so, (2) that counsel's poor work prejudiced him." A.N.J., 168 Wn.2d at 109. There is a strong presumption that counsel's performance was reasonable. In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 141, 385 P.3d 135 (2016). If the alleged deficiency can be characterized as a legitimate trial strategy or tactic, then counsel was not deficient. Caldellis, 187 Wn.2d at 141.

When analyzing prejudice related to effective assistance of counsel during plea negotiations, the focus is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 58.

We review challenged factual findings for substantial evidence. State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Substantial evidence exists when the record contains sufficient evidence to persuade a "fair-minded, rational person, that the declared premise is true." In re Pers. Restraint of Davis, 152 Wn.2d 647, 679-80, 101 P.3d 1 (2004). "The party challenging a factual finding bears the burden of proving that it is not supported by substantial evidence." Davis, 152 Wn.2d at 680. "A trial court's credibility determination cannot be reviewed on appeal, even to the extent there may be other reasonable interpretations of the evidence." Davis, 152 Wn.2d at 680.

## A.

Hollis first contends that Piculell was ineffective for failing to interview witnesses. We disagree. Hollis has not explained which witnesses Piculell should have interviewed. Piculell represented Hollis on the first degree robbery case. The probable

cause to charge Hollis with first degree robbery was based on circumstantial evidence. A GPS tracker on Hollis's car showed his vehicle parked near the pawn shop while it was being robbed. No witnesses were identified in the probable cause statement.

Hollis cannot show that Piculell's performance was deficient without explaining the witnesses that Piculell should have interviewed and how those interviews would have affected Hollis's decision to plead guilty. Therefore, Hollis's claim of ineffective assistance of counsel fails.

### B.

Hollis next argues that both of his counsels' performances fell below an objective standard of reasonableness because they failed to research the relevant law on suppressing search warrants. We agree that only Piculell's performance was deficient, but conclude that Hollis was not prejudiced by his counsel's deficiency.

It is reasonable conduct for an attorney to research the relevant law. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). In the context of plea agreements, the analysis depends in large part on whether the added research "would have led counsel to change his recommendation as to the plea." See Hill, 474 U.S. at 59 (discussing the standard in the context of discovering exculpatory evidence). "[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" Hill, 474 U.S. at 60 (quoting Strickland v. Washington, 466 U.S. 668, 695, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

1.

First we address Piculell's representation. Counsel must, at the very least, "evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty." A.N.J., 168 Wn.2d at 111-12.

During the evidentiary hearing, the State asked Piculell if he "[saw] any legal basis to challenge those search warrants when [he] reviewed them." Piculell replied:

> I did not review them in detail for that; absolutely did not. I was aware of the conclusion, and communicated that to Mr. Hollis. I did—I did not parcel out that search warrant; um, I did not research that search warrant; um, I did not ask him about any of the involved parties, or [confidential informants]—anything associated with that search warrant.

Piculell explained that the reason he did not research the relevant law relating to suppressing the warrants was because when Hollis retained him, the focus was negotiating a plea agreement.

Before recommending a defendant enter a plea agreement, a defense attorney must evaluate the evidence against the accused to accurately assess the plea agreement in relation to the charges. A.N.J., 168 Wn.2d at 111-12. This requires, at the very least, a cursory review of the validity of the search warrants that the State used to obtain the evidence.

Here, the evidence was circumstantial and stemmed from the court order for a GPS tracker. Piculell explained that he did not review the warrants for any legal basis to challenge them; thus his ability to assess the plea agreement and negotiate on behalf of his client was impaired. It was not reasonable for Piculell to rely on Hollis's desire to enter a plea agreement without assessing the validity of the warrants before negotiating with the State.

While Piculell's decision not to research the law relating to the suppression of the search warrant was deficient performance, Hollis fails to establish that there was a reasonable probability that he would have proceeded to trial had he known that he could challenge the basis of the search warrant. Hollis cites State v. Hinton, 179 Wn.2d 862, 319 P.3d 9 (2014), as the case that his counsel would have discovered, if he had conducted research. In Hinton, a police officer obtained the cell phone of a suspected drug dealer and used it to communicate with Hinton to arrange a drug deal. 179 Wn.2d at 870. The Hinton court concluded that "the officer's conduct invaded Hinton's private affairs" and that Hinton's privacy interest was not extinguished when he sent messages to a device that was not in his control. 179 Wn.2d at 870, 873.

Hollis, however, does not explain how Hinton affects the validity of the search warrant here. Hollis merely asserts that there was standing to challenge the warrant. Having standing to challenge the warrant is insufficient to show that Hollis would not have entered the global plea agreement. In Hinton, the officer communicated with the defendant, posing as the owner of the phone, which the court held invaded Hinton's privacy interest. Here, the text messages that formed the basis for the GPS tracker were between Hollis and his brother. The facts are not analogous to Hinton. Therefore, Hollis has not shown he was prejudiced by his attorney's failure.

2.

Hollis next contends that Hartman incorrectly believed that there was no standing to challenge the search warrant and was therefore deficient. The evidence demonstrates that Hartman's performance was not deficient because Hartman evaluated potential motions to suppress evidence.

Hartman interviewed the police detective and believed that the detective was not qualified to testify about cell tower evidence. Hartman sought authorization to hire an expert to assist him in challenging the admissibility of the evidence. Hartman also researched the basis for challenging the search warrant and assessed the risk of an unsuccessful suppression motion. Hartman discussed the cell tower evidence with Hollis. Hartman also indicated that, if the case proceeded to trial, he would have challenged the admissibility of evidence, at least to preserve the issue for appeal. No suppression motions were filed because Hartman began negotiating a plea agreement with the State and in his experience, filing a motion to suppress would have chilled those negotiations. Therefore, Hartman's performance did not fall below an objective standard of reasonableness.

3.

Next Hollis contends that neither of his attorneys verified the State's calculation of Hollis's sentencing exposure, rendering their representation deficient. We disagree.

First, Hollis is not alleging that the State's calculation of his sentencing exposure was incorrect. Second, Hollis has not cited any authority that it is ineffective assistance of counsel when an attorney does not double check the State's calculation of a defendant's sentencing exposure. Furthermore, the record demonstrates that both attorneys, based on their experience, believed that the sentencing calculation was correct. Hartman, at first, did not believe the sentencing calculation, but after researching the issue, realized that the State's calculation was accurate. Therefore, neither attorneys' performance fell below an objective standard of reasonableness.

C.

Finally, Hollis contends that his attorneys failed to provide him with copies of the discovery and thus were deficient. We disagree.

Hollis attempts to attack the trial court's credibility determination, which cannot be reviewed on appeal. Davis, 152 Wn.2d at 680. First, Hollis testified that he asked Piculell at every meeting for a copy of the discovery. Piculell testified that Hollis did not request a copy of the discovery. The trial court found that Piculell's testimony was credible and therefore this issue is not reviewable on appeal.

Second, Hollis testified that Hartman never went over any discovery, except for a copy of the certification for determination of probable cause. Hollis claimed that he asked Hartman for the discovery at every meeting. In contrast, Hartman testified that, although he did not provide Hollis with a redacted copy of the discovery, he reviewed the discovery extensively and "in great detail" with Hollis. Hartman testified that Hollis had asked for the discovery, but Hartman believed the issue was "mooted" when the plea negotiations began. Hartman testified that, at that point, Hollis never renewed his interest in a copy of the discovery, and if Hollis had, he would have sought a redacted version from the State. The trial court did not find Hollis's testimony that he repeatedly asked Hartman for copies of the discovery credible. Again, this credibility determination is not reviewable on appeal.

Hollis's only basis for establishing his plea was involuntary was that his counsel was ineffective. Since we find that neither counsel was ineffective, Hollis has failed to establish that his plea was involuntary. Hollis's plea did not result in manifest injustice.

We affirm.

_Mann, A.C.J._

WE CONCUR: