IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,           )
                               )           No. 36809-2-III
              Respondent,      )
                               )
       v.                      )
                               )
BETHANY B. WALLACE-CORFF,      )           UNPUBLISHED OPINION
                               )
              Appellant.       )

KORSMO, A.C.J. — Bethany Wallace-Corff appeals from a conviction for first

degree assault with a firearm (domestic violence). Because her confession was not the

product of coercion and the evidence amply supported the conviction, we affirm.

FACTS

Shooting victim Gordon Whitaker was in a relationship with Ms. Wallace-Corff

and also in a relationship with Darlene Hill. Neither woman knew about the other; both

became pregnant by Whitaker. Wallace-Corff and Whitaker ended their relationship.

Near the end of December 2014, Whitaker drank heavily at a friend's house and

returned to Hill's home. The two argued and Whitaker went to bed and fell asleep. Hill

went through the sleeping man's phone and discovered text messages indicating Wallace-

Corff's pregnancy. She contacted Wallace-Corff and the two women decided to meet and jointly confront Whitaker. Wallace-Corff went to Hill's residence.

With Hill watching, Wallace-Corff woke Whitaker. When he tried to stand up, she pulled a gun and told him to sit. He then told jurors:

> She said, you fucked with the wrong bitch and looked at me and shot me, just put it on my leg and shot me. It happened so fast. I just seen smoke come out of my leg and the most pain I've ever felt in my life.

Report of Proceedings at 159. Wallace-Corff fled.

Responding Police Officer Elias Huizer located a .380 handgun shell casing at the scene, and doctors removed a slug from the leg. Whitaker suffered a fractured distal femur and underwent three surgeries in addition to physical therapy. He initially declined to identify his assailant, but ultimately named Wallace-Corff. Two messages that she exchanged with Whitaker via Facebook were later admitted at trial. In one, she advised him that he was "lucky" the couple had already broken up, "or [I] woulda gave [you] worse. I hope you think of me . . . everytime u pull your pants over your knees." Ex. 14. She later told him, "I'm not angry with you anymore . . . [I] found closure." *Id*.

Officers arrested Wallace-Corff at her home three weeks after the shooting. Her two children were present, so her ex-husband was called to take custody of them before she was removed to the jail. He advised officers that he owned two handguns, including a .380. When the detective visited him later that day, they discovered that the .380 was missing; the ex-husband believed it had been stolen.

2

Upon arrest, officers advised Ms. Wallace-Corff of her *Miranda*[1] warnings. She asserted her right to counsel. When the detective arrived to transfer her from an interview room to the jail, Ms. Wallace-Corff advised him that she wanted to make a statement. After reminding her that she had asserted her right to counsel and re-advisement of rights, she admitted her participation in the shooting. She explained that she stole the gun from her ex-husband and brought it with her in case Hill was plotting to beat her up. When she later confronted Whitaker, he reached for the gun and the weapon went off accidentally.

The court conducted a CrR 3.5 hearing prior to trial. Ms. Wallace-Corff testified that between the first and second advice of rights, the detective had come to the interview room and questioned her about using her ex-husband's Colt .45 to shoot Whitaker. The detective denied speaking to her after the initial assertion of the right to consult an attorney; he only saw her when he came to take her to the jail. He also testified that he never would have asked about a Colt .45 because he knew that a .380 shell casing had been recovered at the scene. The recorded interview was also played at the hearing. There was no discussion about the type of gun used to shoot Whitaker. The trial court found that the detective had not asked about a Colt weapon unless he did so after the interview and concluded that the recorded interview was voluntarily given.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

After several years of delay, the matter proceeded to trial. Ms. Wallace-Corff waived her right to a jury and the matter was tried to the Honorable Michael McCarthy. He concluded that she was guilty of first degree assault while armed with a firearm.

After the court imposed a mitigated sentence, Ms. Wallace-Corff timely appealed to this court. A panel considered her appeal without conducting oral argument.

ANALYSIS

This appeal presents two issues. Ms. Wallace-Corff argues that her custodial statement was coerced and that the evidence is insufficient to support the verdict. We consider the contentions in that order.

*Custodial Statement*

The first issue is the voluntariness of the statement. Ms. Wallace-Corff contends that she only confessed to the crime so that her ex-husband would not be arrested and leave their children to be placed in foster care. The police did nothing to create a coercive environment.

Prior to conducting a custodial interrogation, police must first advise a suspect of her rights, including the right to remain silent and the right to consult with an attorney prior to answering any questions. *Miranda*, 384 U.S. 436. In addition to whether a defendant properly waived her right to remain silent, a confession can still be involuntary due to the process by which it was obtained. *Massey v. Rhay*, 76 Wn.2d 78, 79, 455 P.2d 367 (1969). Courts apply a totality-of-the-circumstances test to determine if an

individual knowingly and voluntarily confessed or instead confessed as product of police coercion. *State v. Unga*, 165 Wn.2d 95, 101, 196 P.3d 645 (2008). The defendant is entitled to raise the issue of voluntariness to the jury even if the court has admitted the statement. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.41, at 208 (4th ed. 2016); *State v. Huston*, 71 Wn.2d 226, 236-237, 428 P.2d 547 (1967). The question of voluntariness only arises when there has been coercion by the police. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986).

This appeal fails due to that last observation. The detective did nothing to coerce the confession. He did not threaten to arrest the ex-husband or investigate *him* for a crime merely by asking her about the ex-husband's guns. Only in Ms. Wallace-Corff's imagination could that be viewed as an implied threat. Additionally, as the trial court properly noted, nothing in the recorded interview suggested that some factor was at work other than the defendant's voluntary decision to set forth an exculpatory theory of the case.

In the analogous situation of a defendant challenging a guilty plea due to coercion, courts treat the defendant's denial of being coerced or promised anything during the plea hearing as highly persuasive evidence against a later claim of coercion and false promises. A somewhat factually similar arising in that context is *State v. Osborne*, 102 Wn.2d 87, 684 P.2d 683 (1984). There both the husband and wife were in jail; each

entered into separate plea agreements. *Id*. at 90-91. When he pleaded guilty, the husband stated that his plea was voluntary. Later he moved to withdraw his guilty plea, claiming he had been coerced by his wife's threat of suicide. *Id*. at 92. The Washington Supreme Court concluded that the "'highly persuasive'" statements in court were not overcome by the "bare allegation" of the husband's subsequent affidavit; more was required. *Id*. at 97.

Here, too, there is nothing more than a "bare allegation" of coercion to dispute Ms. Wallace-Corff's statement in the interview that no threats or promises impacted her decision to give a statement to the detective. For both reasons, the coercion claim fails.

The trial court did not err in concluding that Ms. Wallace-Corff's statement was voluntary.

*Sufficiency of the Evidence*

Appellant also argues that there was insufficient evidence that she intended to inflict great bodily harm when she shot Whitaker. However, the evidence supports the bench verdict.

Familiar standards guide our review here. "[F]ollowing a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-106, 330 P.3d 182 (2014). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id*. at 106. Unchallenged factual findings are verities on appeal. *State v. Baker*, 136 Wn. App.

6

878, 880, 151 P.3d 237 (2007). In reviewing insufficiency claims, the appellant necessarily admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Finally, this court must defer to the finder of fact in resolving conflicting evidence and credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

A person is guilty of first degree assault if "with intent to inflict great bodily harm," she assaults "[a]nother with a firearm." RCW 9A.36.011(1)(a). "'Great bodily harm'" includes injury that "causes a significant permanent loss or impairment of the function of any bodily part." RCW 9A.04.110(4)(c).

While Ms. Wallace-Corff argues that the evidence was insufficient to show she intended to inflict great bodily harm, she does not challenge any of the findings of fact entered by the trial court. The unchallenged findings alone doom her argument on this point. Nonetheless, the findings also are amply supported by the evidence. The trial court relied on the Facebook message that Wallace-Corff hoped Whitaker would think of her every time he pulled his pants up to determine that she "intended to inflict great bodily harm by the practice known as kneecapping." Clerk's Papers at 80.

The trial court understandably reached that conclusion. A reasonable person would recognize that great bodily harm would ensure from placing a gun on another's leg and firing the weapon. Injury is guaranteed in such a circumstance. Disabling another

7

person's leg for any length of time easily meets the definition of "great bodily harm."

The evidence was sufficient to support the bench verdict.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, C.J.