# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53610-2-II |
| Respondent, | |
| v. | |
| JORGE L. DOMINGUEZ VERA, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Jorge L. Dominguez Vera appeals his conviction for attempted child molestation in the first degree. Dominguez Vera argues that the trial court abused its discretion by denying his motion to withdraw his guilty plea based on ineffective assistance of counsel. He argues that he received ineffective assistance because his counsel failed to 1) interview potentially exculpatory witnesses and 2) adequately explain the consequences of an indeterminate sentence. We disagree and affirm Dominguez Vera's conviction.

## FACTS

A. BACKGROUND

E.M.G.-G.[1] reported to her aunt that Dominguez Vera, her mother's boyfriend, was watching her shower. E.M.G.-G. later disclosed to a CPS investigator that Dominguez Vera had touched her "privates" with his hand over her clothing while picking up trash with his other hand. Clerk's Papers (CP) at 57. At a forensic interview, E.M.G.-G. reported that when her mother went

---

[1] We use initials to protect the victim's identity and privacy interests. *See* General Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crimes* (Wash.Ct. App.), available at: http://www.courts.wa.gov/appellate_trial_courts/.

to work, Dominguez Vera came into her room while she was sleeping, woke her up, and started touching and squeezing her underneath her underwear. E.M.G.-G. was eight years old the first time Dominguez Vera touched her.

The State charged Dominguez Vera by information with two counts of child molestation in the first degree. At his arraignment, Dominguez Vera pleaded not guilty through his attorney, Louis Byrd.

B.       GUILTY PLEA

After accepting the State's plea offer, Dominguez Vera signed a "Statement of Defendant on Plea of Guilty to Sex Offense" (Plea Statement), in which he "freely and voluntarily" pleaded guilty to one count of attempted child molestation in the first degree.[2]  CP at 38.  The Plea Statement included the following provision:

> For sex offenses committed on or after September 1, 2001: (i) Sentencing under RCW 9.94A.507: If this offense is any of the offenses listed in subsections (aa) or (bb) below, the judge will impose a maximum term of confinement consisting of the statutory maximum sentence of the offense and a minimum term of confinement either within the standard range for the offense or outside the standard range if an exceptional sentence is appropriate. The minimum term of confinement that is imposed may be increased by the Indeterminate Sentence Review Board if the Board determines by a preponderance of the evidence that it is more likely than not that I will commit sex offenses if released from custody.

CP at 31.  This provision was crossed out on the Plea Statement, but the word "applies" was written in the margin next to this provision.  CP at 31.  Byrd also wrote the word "applies" next to this provision and placed his initials next to the word "applies" he inserted.  CP at 31.

Dominguez Vera signed below a provision of the Plea Statement, which stated:

---

[2]  RCW 9A.44.083

>My lawyer has explained to me, and we have fully discussed, all of the above paragraphs and the "Offender Registration" Attachment. I understand them all. I have been given a copy of this "Statement of Defendant on Plea of Guilty." I have no further questions to ask the judge.

CP at 39. Byrd signed below the provision stating, "I have read and discussed this statement with the defendant. I believe that the defendant is competent and fully understands the statement." CP at 39. The Plea Statement also included the following statement: "The defendant's lawyer had previously read to him or her the entire statement above" and "the defendant understood it in full." CP at 39.

Attached to the Plea Statement and incorporated by reference was an "Indeterminate Sentence Review Board (RCW 9.94A.507) Pretrial Settlement Agreement" (Plea Agreement). This Plea Agreement, signed by both Dominguez Vera and Byrd, stated that the original charges and the charge of attempted child molestation in the first degree are subject to the authority of the Indeterminate Sentencing Review Board (ISRB). The Plea Agreement also stated that the State, "defense attorney, and defendant stipulate that the minimum term sentence recommendation will be 40 months and the maximum term sentence will be LIFE." CP at 45 (boldface omitted). Dominguez Vera initialed this provision. The Plea Agreement further stated that the court will sentence Dominguez Vera to "the supervision of the Department of Corrections (DOC) and the authority of the Indeterminate Sentence Review Board for any period of time the person is released from total confinement before the expiration of the maximum sentence. RCW 9.94A.507(5)." CP at 45.

On the same day Dominguez Vera signed the Plea Agreement, the trial court held a change of plea hearing. The trial court conducted a colloquy with Dominguez Vera where Dominguez

Vera stated that he understood the elements of the charge and that he made the decision to plead guilty after discussing the risks and benefits of the decision with his attorney. Dominguez Vera also stated that he did not have questions about the Plea Statement.

The trial court explained to Dominguez Vera that at sentencing, the court will be setting the minimum sentence and then Dominguez Vera would "be on review moving forward as to when, if, you can be released. Do you understand that?" Verified Report of Proceedings (VRP) (Oct. 10, 2018) at 24. Byrd interrupted the trial court about the criminal history declaration before Dominguez Vera could answer, so Dominguez Vera did not give a response to the trial court's question. However, the trial court asked Dominguez Vera on numerous occasions throughout the plea colloquy if he understood what the trial court was telling him, and Dominguez Vera responded that he did.

The trial court stated, "With all that in mind, and after discussing the case with your attorney, Mr. Byrd, how do you plead to attempted child molestation in the first degree in count one?" VRP (Oct 10, 2018) at 27. Dominguez Vera responded, "Guilty." VRP (Oct. 10, 2018) at 27. The trial court found Dominguez Vera's "plea to be knowingly, intelligently, and voluntarily made. He understands the charges and the consequences of the plea." VRP (Oct. 10, 2018) at 29.

C.     MOTION TO WITHDRAW GUILTY PLEA

On the day Dominguez Vera's case was set for sentencing, Dominguez Vera requested a new attorney because Byrd was not "representing me right." VRP (Nov. 28, 2018) at 35. Dominguez Vera stated, "[T]here is a couple things in the papers that I read that I was never aware of. So, I'm not going to agree to something that I never done." VRP (Nov. 28, 2018) at 35.

Dominguez Vera also stated he could not contact Byrd. According to Dominguez Vera, when he was in custody during the period between his first appearance and his arraignment, he tried to call Byrd every day for two weeks, and he never got an answer. The trial court appointed new counsel for Dominguez Vera.

Dominguez Vera, through new counsel, filed a Motion to Withdraw Guilty Plea on February 12, 2019. Dominguez Vera argued that his plea was not voluntary because he received ineffective assistance of counsel. Dominguez Vera claimed he received ineffective assistance of counsel because he did not understand the direct consequences of pleading guilty and because Byrd failed to interview witnesses.

In light of his motion to withdraw his guilty plea, Dominguez Vera waived his attorney-client privilege and the State interviewed Byrd. During the interview, Byrd stated that prior to even generating the plea form, he ascertained if pleading guilty was the path his client wanted to take. Byrd also stated, "I prepare a plea form because I have talked over the case, gone through the Discovery with the client and the client wants to accept the State's offer." Ex. 1 at 1. Dominguez Vera wanted to enter a plea for attempted child molestation in the first degree. Byrd and Dominguez Vera discussed what the witnesses were saying, and they went through all the discovery. Byrd stated that Dominguez Vera "wanted to get this case resolved as quickly as possible." Ex. 1 at 3. Dominguez Vera "made it very clear . . . that he did not want to go to trial . . . . He wanted to take advantage of the [plea] Offer." Ex. 1 at 3. Byrd further stated that he went through the plea form with Dominguez Vera. Ex. 1 at 1. Byrd typically does not interview

witnesses if the client wants to plead guilty. Dominguez Vera did not indicate at any time before he entered his plea that he wanted Byrd to interview any witnesses.

At the hearing on the motion to withdraw his guilty plea, Dominguez Vera testified that when he first met Byrd, Byrd only explained that he was being charged with child molestation—he did not explain anything else. Byrd only met with Dominguez Vera one time outside of court before the plea. Dominguez Vera was in custody for two months and Byrd never answered his calls. On cross examination, Dominguez Vera admitted that he met with Byrd a number of times in person in the jail and met with him a number of times in court.

Dominguez Vera also testified that Byrd never went through police reports or discovery with him. Dominguez Vera asked Byrd to interview his "mother-in-law"[3] and his girlfriend. VRP (May 21, 2019) at 73. According to Dominguez Vera, these witnesses would have been able to testify that "what they were saying wasn't true." VRP (May 21, 2019) at 74. Other than this statement, Dominguez Vera did not present any evidence as to what specific information these witnesses possessed.

Dominguez Vera further testified that when Byrd met with him the day before the plea hearing, Byrd told him that "we don't have a police report. We ain't got no witness." VRP at 76. When the State noted during cross examination that Byrd had received discovery, Dominguez Vera responded that Byrd was lying about having no discovery.

---

[3] Dominguez Vera refers to E.M.G.-G.'s grandmother, who was his girlfriend's mother, as his "mother-in-law." VRP (May 21, 2019) at 73.

Dominguez Vera testified that Byrd never went over what the ISRB was or what happens when someone is on an ISRB sentence. He stated that he would not have signed the plea agreement had it been explained to him. Dominguez Vera also stated that despite his signature on the Plea Statement, he did not know to what he was pleading guilty. Dominguez Vera claimed, "They had me sign this before I knew what this was." VRP (May 21, 2019) at 84. Dominguez Vera also claimed, "[T]hey never explained to me what was going on, because if I would have known, if it was explained to me what that paper says, that I'm gonna be—that I have that for life, I would not ever sign it." VRP (May 21, 2019) at 74. But Dominguez Vera agreed he initialed a plea agreement offered by the State, which states he knew the sentencing range for attempted child molestation in the first degree was 38.25 to 51 months. He also initialed a plea agreement knowing that the charge to which he was pleading guilty carried a maximum possible penalty of life.

The trial court ruled:

> I think what we have here is someone who wanted to take advantage of the Plea Agreement, do so. M[r.] Byrd did review discovery. The defendant says he was aware of what the witnesses were saying. The value of those witness statements when they wouldn't have had an ability to observe the conduct that was charged, is minimal. It makes perfect sense that he would take advantage of this offer and plead guilty at the time. If he says he doesn't know what ISRB was; it's in the form. I believe I explained the ISRB to him, but even if I don't, he testifies at change of plea that he reviewed the form. He had his attorney read through it with him. And I don't see anything here that would eliminate not just a facially valid plea, but a knowing plea, that would be based on a hard assessment of the evidence that's being brought by the State to bear on him.
>
> And so, I'm going to deny the motion.

VRP (May 21, 2019) at 117.

A week after denying Dominguez Vera's motion to withdraw his guilty plea, the trial court sentenced Dominguez Vera. Dominguez Vera appeals.

ANALYSIS

Dominguez Vera argues that the trial court erred by denying his motion to withdraw his guilty plea because he received ineffective assistance of counsel when counsel failed to interview witnesses and failed to explain the consequences of an indeterminate sentence. We disagree.

A. INEFFECTIVE ASSISTANCE OF COUNSEL

To establish ineffective assistance of counsel resulting in a guilty plea, the defendant must show (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) he or she was prejudiced by the deficient performance. *State v. Sandoval*, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Ineffective assistance of counsel claims present mixed questions of law and fact, and are reviewed de novo. *State v. A.N.J.*, 168 Wn.2d 91, 109, 225 P.3d 956 (2010).

"In a plea bargaining context, 'effective assistance of counsel' merely requires that counsel 'actually and substantially [assist] his client in deciding whether to plead guilty.'" *State v. Osborne*, 102 Wn.2d 87, 99, 684 P.2d 683 (1984) (alteration in original) (quoting *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901, *review denied*, 96 Wn.2d 1023 (1981)). And in the plea bargaining context, the prejudice prong requires a showing that but for counsel's errors,

it is reasonably probable the defendant would not have pleaded guilty and would have insisted on going to trial. *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993).

1. Failure to Interview Witnesses

An attorney has wide discretion in deciding which witnesses, if any, to interview. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 488, 965 P.2d 593 (1998). When seeking relief from counsel's claimed failure to investigate, the defendant "must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004). Even where a defendant is able to show that exculpatory evidence unknown to trial counsel would have been uncovered by further investigation or interview, such showing is considered in light of the strength of the government's case. *Id*.

a. Deficient performance

Dominguez Vera testified that his "mother-in-law" and his girlfriend would have been able to testify that "what they were saying wasn't true." VRP (May 21, 2019) at 73-74. At the hearing on the motion to withdraw his guilty plea, Dominguez Vera's counsel argued that Dominguez Vera's girlfriend would be able to testify that the alleged victim denied any touching and that Dominguez Vera's "mother-in-law" would be able to testify that she usually slept with the alleged victim in their residence. Counsel also argued that the two witnesses "would provide information as to the likelihood of the two of them, Mr. Dominguez Vera and the alleged victim, being together for this alleged act or acts to actually take place." VRP (May 21, 2019) at 101. But argument by counsel is not evidence. *Jones v. Hogan*, 56 Wn.2d 23, 31, 351 P.2d 153 (1960).

9

Other than a bare statement that the two witnesses would testify that "what they were saying wasn't true," there is no evidence as to what information the two witnesses possessed and could testify about. Thus, Dominguez Vera fails to show that there is a reasonable likelihood that further investigation by Byrd would have produced useful information not already known to defendant's trial counsel. *See Davis*, 152 Wn.2d at 739.

Because Dominguez Vera was unable to show that further investigation would have uncovered evidence unknown to defense counsel, Byrd's performance did not fall below an objective standard of reasonableness. *See id.*; *Sandoval*, 171 Wn.2d at 169. Dominguez Vera fails to show that he received ineffective assistance of counsel.[4]

        b.     Prejudice

Even if Byrd's failure to interview the two witnesses is deemed deficient representation, Dominguez Vera fails to show that he was prejudiced. In fact, Dominguez Vera's brief does not

---

[4] Dominguez Vera relies on *A.N.J.* to argue that his counsel was ineffective because "he failed to adequately investigate during plea negotiations." Br. of Appellant at 16. In *A.N.J.*, our Supreme Court held that

> The degree and extent of investigation required will vary depending upon the issues and facts of each case, but we hold that at the very least, counsel must reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty.

168 Wn.2d at 111-12.

But *A.N.J.* is inapposite because the court did not hold that A.N.J. received ineffective assistance of counsel due to his attorney's lack of investigation. Rather, the court held that A.N.J.'s counsel was ineffective because A.N.J. was misinformed of the consequences of his plea and was not adequately informed of the nature of the charge against him. *A.N.J.* 168 Wn.2d at 119-20.

provide any argument as to how he is prejudiced by any alleged failure to interview witnesses.[5]

Therefore, Dominguez Vera's ineffective assistance of counsel claim based on a failure to

interview witnesses fails.

2.      Indeterminate Sentence

Dominguez Vera argues that his counsel was "ineffective by failing to adequately explain

the consequences of an indeterminate sentence." Br. of Appellant at 18 (boldface omitted) (some

capitalization omitted). We disagree.

Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent.

*In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297, 88 P.3d 390 (2004). Defense counsel must

inform the defendant of all direct consequences of the guilty plea. *A.N.J.*, 168 Wn.2d at 113-14.

Moreover, a plea is involuntary when the defendant is not fully informed of its consequences due

to mistaken understanding that determinate sentencing applied. *In re Postsentence Review of*

*Hudgens*, 156 Wn. App. 411, 415-17, 233 P.3d 566 (2010).

Here, Dominguez Vera signed the Plea Statement, which included a provision explaining

that the judge would impose a maximum term of confinement consisting of the statutory maximum

sentence of the offense, life in this case, and minimum term of confinement. The Plea Statement

also stated that the minimum term of confinement could be increased by the ISRB if it determined

by a preponderance of the evidence that it is more likely than not that Dominguez Vera would

commit sex offenses if released from custody. While this section was crossed out, the word

---

[5] Dominguez Vera merely states that he testified that he wanted his attorney to interview the two witnesses.

"applies" is handwritten twice in the margin next to this provision and Byrd initialed the provision next to one of the word "applies." CP at 31.

Byrd signed below the provision in the Plea Statement that states, "I have read and discussed this statement with the defendant. I believe that the defendant is competent and fully understands the statement." CP at 39. Dominguez Vera signed below the provision in the Plea Statement that states, "My lawyer has explained to me, and we have fully discussed, all of the above paragraphs . . . I understand them all . . . I have no further questions to ask the judge." CP at 39.

Byrd stated in his interview with the State that he had talked over the case with Dominguez Vera and went through the plea form with Dominguez Vera. Dominguez Vera made it very clear to Byrd that he did not want to go to trial and wanted to take advantage of the plea offer.

And at the change of plea hearing, Dominguez Vera stated on the record that he made the decision to plead guilty after discussing the risks and benefits of the decision with his attorney. Dominguez Vera repeatedly stated that he understood what the trial court was telling him regarding the consequences of the plea deal.

Attached to the Plea Statement and incorporated by reference was an Indeterminate Sentence Review Board Pretrial Settlement Agreement, also signed by Dominguez Vera and Byrd. This agreement stated that Dominguez Vera was subject to the ISRB's authority. The Plea Agreement also stated that the State, "defense attorney, and defendant stipulate that the minimum term sentence recommendation will be 40 months and maximum term sentence will be LIFE." CP at 45 (boldface omitted). Dominguez Vera initialed this provision. The Plea Agreement further

No. 53610-2-II

stated that the court will sentence Dominguez Vera to "the supervision of the Department of Corrections (DOC) and the authority of the Indeterminate Sentence Review Board for any period of time the person is released from total confinement before the expiration of the maximum sentence. RCW 9.94A.507(5)." CP at 45. Dominguez Vera testified at the hearing on the motion to withdraw his plea that despite his signature, he did not know to what he was pleading guilty; but he admitted on cross-examination that he initialed the plea agreement knowing the maximum sentence was life in prison.

The evidence shows that Dominguez Vera was informed of the direct consequences of his guilty plea and he understood that an indeterminate sentence applied. Because Byrd did actually and substantially assist Dominguez Vera in deciding whether to plead guilty, Byrd's performance did not fall below an objective standard of reasonableness. *See Osborne*, 102 Wn.2d at 99. Thus, Byrd's performance was not deficient. Because Byrd's performance was not deficient, Dominguez Vera's ineffective assistance of counsel claim due to a lack of understanding that an indeterminate sentence applied fails.[6]

---

[6] This court reviews the denial of a motion to withdraw a guilty plea for an abuse of discretion. *A.N.J.*, 168 Wn.2d at 106. A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *State v. Brooks*, 195 Wn.2d 91, 97, 455 P.3d 1151 (2020).

Dominguez Vera only argues that the trial court erred in denying his motion to withdraw his guilty plea because he received ineffective assistance of counsel. As discussed above, Dominguez Vera did not receive ineffective assistance of counsel; thus, he fails to show a manifest injustice that was necessary to correct. *See State v. Pugh*, 153 Wn. App. 569, 577, 222 P.3d 821 (2009). Therefore, the trial court's decision to deny Dominguez Vera's motion to withdraw his guilty plea was not based on untenable grounds or reasons, and the trial court did not abuse its discretion in denying Dominguez Vera's motion to withdraw his guilty plea.

13

No. 53610-2-II

Dominguez Vera's argument that the trial court abused its discretion by denying his motion to withdraw his guilty plea based on ineffective assistance of counsel fails. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Glasgow, J.