[No. 26769-8-I.    Division One.    January 21, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS WATSON, *Appellant*.

*Anna-Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Shaw, Deputy,* for respondent.

FORREST, J. — Thomas Watson appeals his conviction and sentence for burglary alleging that (1) the sentencing court erred in not granting his motion to withdraw his guilty plea, and (2) the State's delay in filing charges violated his due process rights. We affirm.

Watson committed a number of burglaries in January and February 1989. In October 1989, Watson entered into a plea agreement as to several of the burglaries and a

57-month sentence was imposed. In February 1990, Watson was sentenced regarding another burglary from that period, and the sentence imposed, 50 months, was ordered to run concurrently with the prior sentence. The 50-month sentence imposed by the judge was within the standard range and was deliberately fixed so that it would terminate at the same time as Watson's first sentence. On March 16, 1990, charges were filed regarding yet another burglary from February 1989. On May 1, 1990, Watson entered a plea agreement which provided that the State would recommend 57 months to run concurrently with the prior sentences, with credit for time served.[1]

At the sentencing hearing the court and prosecutor interpreted the recommendation to mean that Watson would be serving 14 months beyond the termination of his two prior sentences. Watson claimed that it was his understanding that he would not serve any additional time in prison pursuant to the recommendation and moved to withdraw his plea. His motion was denied.

### WITHDRAWAL OF PLEA[2]

■ On appeal, Watson argues that the sentencing court erred in not allowing him to withdraw his plea pursuant to CrR 4.2(f).[3] CrR 4.2(f) requires the court to allow withdrawal of a guilty plea when it is necessary to correct a manifest injustice. In *State v. Taylor*,[4] the Supreme Court

---

[1]The recommendation in the plea agreement reads, "57 months in prison w/credit for time already served to run *concurrent* to matters presently serving time on."

[2]We wonder whether Watson fully appreciates the risk he is running in seeking this relief. If the State shall elect to proceed to trial and secure a conviction (the plea suggests its evidence may be rather strong), Watson would be exposed to the risk of a substantially greater period of incarceration than that to which he is now sentenced.

[3]CrR 4.2(f) reads, in part,
"The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice."

[4]83 Wn.2d 594, 521 P.2d 699 (1974).

listed four indicia of manifest injustice which would allow withdrawal of a guilty plea. The four indicia are (1) the denial of effective assistance of counsel, (2) that the plea was not ratified by the defendant, (3) that the plea was involuntary, and (4) that the plea agreement was not honored by the prosecution.[5] The *Taylor* court noted that CrR 4.2(f) places a "demanding standard" on the defendant to establish a manifest injustice. *State v. Taylor*, 83 Wn.2d 594, 597, 521 P.2d 699 (1974). Watson has not alleged ineffective assistance of counsel. Nor is there any question that Watson ratified his plea. Watson only asserts the latter two bases of manifest injustice: that his plea was not voluntary because he did not understand the true implications of the terms of the plea agreement, and that the prosecution did not abide by the plea agreement. Neither has merit.

■ ■ Initially we note that it appears that Watson misconstrues the meaning of a plea bargain. A plea bargain is not a bargain with the judge as to what sentence will be imposed. It is a bargain with the prosecutor as to what the prosecutor's recommendation will be. Once the prosecutor makes the recommendation, the object of the plea bargain is accomplished. The sentencing judge is not bound by the plea agreement.[6] Thus, even if the prosecutor had agreed with Watson's interpretation, the judge was not bound to follow the recommendation. Indeed, since Watson is being sentenced pursuant to RCW 9.94A.400(3),[7] the sentencing judge had the authority with this plea agreement before

---

[5] *Taylor*, at 597.

[6] RCW 9.94A.090(2) states:

"The sentencing judge is not bound by any recommendations contained in an allowed plea agreement and the defendant shall be so informed at the time of plea."

[7] RCW 9.94A.400(3) reads, in part: "whenever a person is sentenced for a felony that was committed while the person was not under sentence of a felony, the sentence shall run concurrently with any felony sentence which has been imposed by any court . . . subsequent to the commission of the crime being sentenced unless the court pronouncing the current sentence expressly orders that they be served consecutively."

him to make the sentence imposed consecutive to Watson's prior sentences. Such a decision is within the unfettered discretion of the sentencing judge.[8] A sentencing court's refusal to follow the prosecutor's recommendation does not constitute manifest injustice such as to allow a defendant to withdraw a guilty plea.[9]

Watson asserts that the State failed to honor its plea bargain when it did not recommend in accordance with Watson's understanding of the agreement. The prosecutor urged that Watson receive a 57-month concurrent sentence, but denied the recommendation meant Watson's sentence would terminate at the same time as his prior sentences. We find no breach of the State's obligation.

■ The interpretation of the plea agreement espoused by the prosecutor reflects the plain meaning of the agreement, and the only meaning that could properly be given to it. Watson's argument that "concurrently", as used in his plea agreement, means that the last sentence imposed will commence at a different time but must expire at the same time as the prior sentence is without merit. Neither the dictionary[10] nor the law[11] supports such a definition. Wat-

---

[8] *State v. Kern,* 55 Wn. App. 803, 806, 780 P.2d 916 (1989), *review denied,* 114 Wn.2d 1003 (1990); *State v. Linderman,* 54 Wn. App. 137, 139, 772 P.2d 1025, *review denied,* 113 Wn.2d 1004 (1989).

[9] *State v. Weaver,* 46 Wn. App. 35, 40-41, 729 P.2d 64 (1986), *review denied,* 107 Wn.2d 1031 (1987).

[10] In *Webster's Third New International Dictionary* "concur" is defined as "to happen together : COINCIDE" and "concurrent" is defined as "occurring, arising, or operating at the same time often in relationship, conjunction, association, or cooperation" or "converging, meeting, intersecting, running together at a point". *Webster's Third New International Dictionary* 472 (1969). None of these definitions supports Watson's position that concurrent means ending at the same time.

[11] The term "concurrent sentences" is defined as "[t]wo or more terms of imprisonment, all or part of each term of which is served simultaneously and the prisoner is entitled to discharge at the expiration of the longest term specified." Black's Law Dictionary 264 (5th rev. ed. 1979). *See also State v. Roberts,* 117 Wn.2d 576, 586, 817 P.2d 855 (1991) (holding that for purposes of RCW 9.94A.360(6) the term "served concurrently" does not mean beginning and ending at the same time).

son's interpretation of "concurrently" would violate the proportionality goal of the Sentencing Reform Act of 1981 (SRA),[12] in that two defendants with the same standard range receiving "concurrent" sentences would serve different terms depending on the existence of prior sentences. Moreover, on these facts it would produce an exceptional sentence without the necessary findings.[13] For this reason "concurrently", as used in regard to prior sentences, can only mean that the last sentence imposed will *overlap* the prior sentences, not that it will terminate at the same time. In other words, "concurrently" is simply used in contradistinction to "consecutive".

██ Likewise, Watson's claim that "credit for time served" means that he may receive credit for time served on other sentences imposed prior to the date of sentencing is without merit. Former RCW 9.94A.120(13)[14] implements a defendant's constitutional right to receive credit for any time that he has been held in custody by reason of that charge. The SRA does not authorize giving credit for time being served on other sentences.[15] Insofar as time served on other charges is relevant, the court may consider that

---

[12]RCW 9.94A.010 states the purposes of the Sentencing Reform Act of 1981, in part, to:

"(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

" . . . .

"(3) Be commensurate with the punishment imposed on others committing similar offenses".

[13]The first sentence began on March 20, 1989. This sentencing proceeding was held on June 15, 1990, at which time *15* months had passed on the first sentence. To end simultaneously, this sentence would have to be *42 months 5 days*, which would be outside standard range of 43 to 57 months.

[14]Former RCW 9.94A.120(13) reads:

"The sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced."

[15]*See State v. Williams*, 59 Wn. App. 379, 796 P.2d 1301 (1990).

factor in exercising its discretion within the standard range,[16] or in some truly extraordinary case might consider it a reason for an exceptional sentence. Nonetheless, "credit for time served" in a standard plea bargain has a fixed legal meaning which is time served "solely in regard to the offense for which the offender is being sentenced." RCW 9.94A.120(13). We hold that the State's recommendation to the sentencing court was in accordance with the plain meaning of the plea agreement, and thus, the State abided by that agreement.

■ Watson also contends that his plea must be considered involuntary because he did not understand the true meaning of the recommendation to which he agreed. There is no evidence that the prosecutor did anything to mislead Watson as to the meaning of "concurrently" or "time served". Had Watson's misunderstanding been caused by a significant mutual mistake between the prosecutor and himself, withdrawal of the plea would be proper.[17] Here, any misunderstanding is solely the result of Watson's failure to inquire as to the meaning of the terms or to state his understanding *prior* to entry of his plea.[18] Watson's undisclosed and unreasonable interpretation of the terms "concurrently" and "time served" in his plea agreement is an insufficient basis to set aside his plea. Watson was properly advised of his constitutional rights, the nature of the charge against him, the standard range applicable, and that the judge was not bound by the prosecutor's recommendation. The State fulfilled the plea bargain by its recommendation to the

---

[16]This was done with Watson's second sentence where the judge went to the low end of the standard range to make the sentences end at the same time.

[17]*State v. Miller*, 110 Wn.2d 528, 756 P.2d 122 (1988); *State v. Skiggn*, 58 Wn. App. 831, 795 P.2d 169 (1990). Both *Miller* and *Skiggn* involve a mutual mistake as to the applicable sentencing range.

[18]There has been no showing that Watson was misadvised by his attorney. *See Lutton v. Smith*, 8 Wn. App. 822, 824, 509 P.2d 58 (1973).

court. We find Watson bound by the entry of his plea of guilty.

## PREACCUSATORIAL DELAY

█ Finally, Watson asserts that the delay in filing charges[19] violated his due process rights. Washington has established a 3-prong test to determine if preaccusatorial delay has violated due process: (1) the defendant must show the delay has prejudiced him, (2) the court must consider the reasons for the delay, and (3) the court must balance the State's justifications against the defendant's prejudice.[20] We note that a voluntary plea of guilty waives the right to complain of preaccusatorial delay.[21] However, even if Watson had not waived the right to complain, he has shown no prejudice. Since Watson's three burglary convictions did not arise out of the same conduct, there is no statutory requirement that they be joined.[22] Watson had no right to have all his burglaries sentenced at the same time, the only situation which would preclude overlapping sentences. Accordingly, we need not call upon the State to justify the delay.

Affirmed.

WEBSTER, A.C.J., and AGID, J., concur.

---

[19]The crime was committed on February 25, 1989. The charge was filed on March 16, 1990, 4 months after Watson had begun serving time on a contemporaneous burglary. Watson alleges that the prosecution had the evidence to proceed with this third charge in June 1989.

[20]*State v. Alvin*, 109 Wn.2d 602, 604, 746 P.2d 807 (1987); *State v. Gee*, 52 Wn. App. 357, 366-67, 760 P.2d 361 (1988), *review denied*, 111 Wn.2d 1031 (1989). Prejudice from delay classically involves the loss of evidence or witnesses. *See, e.g.*, *Gee*, at 367.

[21]*State v. Bailey*, 53 Wn. App. 905, 907, 771 P.2d 766 (1989).

[22]*State v. Thompson*, 36 Wn. App. 249, 254, 673 P.2d 630 (1983), *review denied*, 101 Wn.2d 1002 (1984); CrR 4.3.