IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83759-1-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| TIMOTHY TAING SOK, | |
| Respondent. | |

COBURN, J. — Timothy Sok pleaded guilty to assault in the second degree with a deadly weapon against an intimate partner. He now claims his plea was involuntary as a result of family and financial pressures of being held in custody pending trial. He also claims the trial court erred by imposing a no-contact order for longer than the statutory maximum permitted, and by imposing a victim penalty assessment against constitutional protections against excessive fines. We affirm. We decline to address his additional claim related to actions by the county clerk that are outside of the record.

FACTS

On December 9, 2021, Sok met up with his former girlfriend, K.V., in the parking lot of an Everett craft store to exchange belongings. At this meeting, Sok attempted to rekindle the relationship, but K.V. declined. Sok then pointed a

Citations and pin cites are based on the Westlaw online version of the cited material

handgun at K.V.'s abdomen, with the gun's laser sight visible on her body. Sok then chambered a round while pointing the gun at K.V. and stated "oh you really don't think I'll shoot you?" Sok then left the scene without harming K.V.

K.V. met with an Everett police officer a few days later to report the incident. K.V. reported that she and Sok had dated for a few months, ending their relationship in November 2021. K.V. reported that after the two broke up, Sok called her "up to 40 times a day" and left voicemails threatening to "shoot up" her home, harm her new boyfriend, and harm himself. K.V. also reported numerous other incidents of Sok's concerning behavior during their relationship, including threatening to harm himself and others with weapons, controlling K.V.'s activities, telling K.V. that if Sok could not have her "no one can," instances of violence toward humans and animals, and forcing K.V. to have sex. K.V. reported to police that Sok had access to at least three firearms, including the handgun used against her, a rifle, and a pistol. Police identified Sok as a member of the "Tiny Rascals Gang."

Police located and arrested Sok on December 16, 2021. Officers located a "ghost gun" in Sok's vehicle. Sok admitted to officers that he had built the gun from scratch. A subsequent search of Sok's home located two guns in his closet matching the description given by K.V. Sok was charged with one count of assault in the second degree against an intimate partner under RCW 9A.36.021.

Following Sok's arrest, the court imposed a bail of $100,000. At arraignment on January 6, 2022, Sok moved to reduce the bail amount to $5,000 citing his lack of criminal history and his young son's cancer diagnosis. The

State argued that because of his violent offense and domestic violence allegations, access to weapons, and gang membership, Sok presented a risk to the community and to the victim if bail were reduced. The trial court found that Sok presented a risk to the community, but reduced bail to $50,000. Sok moved to reduce bail again on the same bases approximately one month later, resulting in a reduction to $25,000. At this hearing, the defense explained to the court that the State had offered a plea agreement with a sentencing recommendation that would allow Sok to be released from jail the following week.

A few days later, Sok pleaded guilty as charged. The plea hearing and sentencing were conducted on the same day.

In the written plea agreement signed by Sok, he acknowledged

8.      I make this plea freely and voluntarily.

9.      No one has threatened harm of any kind to me or to any other person to cause me to make this plea.

10.     No person has made promises of any kind to cause me to enter this plea except as set forth in this statement.

At the plea hearing on February 14, 2022, the trial court engaged in a plea colloquy with Sok, in which he acknowledged that he understood the terms of the agreement and the rights he was waiving by choosing not to go to trial. Sok's attorney noted at the beginning of the hearing that Sok had "legitimate legal issues" to assert at trial, but decided to forgo that right because he was in custody pending trial and was concerned about his son's illness. With all of this information, the trial court found "the plea has been knowingly, voluntarily, and intelligently made and is supported by an adequate fact basis." The trial court

additionally found that domestic violence was "pled [sic] and proven."

The trial court sentenced Sok to three months of confinement with credit for time served, to be followed by 12 months of community supervision. The trial court also ordered that Sok have no contact with K.V. for 10 years, the statutory maximum period under RCW 9A.36.021, with the end date listed as February 14, 2032. This order terminated a pretrial no-contact order put in place on January 6, 2021. The trial court followed Sok's request to impose only the mandatory $500 victim assessment fee and a $100 biological sample fee for DNA collection.

Sok now appeals.

DISCUSSION

Guilty Plea

Sok first argues that this court should find his guilty plea involuntary and allow him to withdraw his plea. Sok argues that he "felt coerced into pleading guilty by the pressures of poverty, exorbitant bail, time already served in jail, the promise of no additional jail time, and the desire to promptly reunite" with his ill son.

A defendant may withdraw a guilty plea if doing so is necessary to correct a "manifest injustice." State v. Watson, 63 Wn. App. 854, 856, 822 P.2d 327 (1992). A manifest injustice occurs when: (1) the defendant did not receive effective assistance of counsel before entering the plea, (2) the plea was not ratified by the defendant, (3) the plea was involuntary, or (4) the prosecution fails to honor the plea agreement. State v. Watson, 63 Wn. App. at 857 (citing State v. Taylor, 83 Wn.2d 594, 521 P.2d 699 (1974)). A manifest injustice is one that is

obvious, directly observable, overt, and not obscure. State v. Turley, 149 Wn.2d 395, 69 P.3d 338 (2003).

Sok claims only that his plea must be reversed because it was involuntary. We determine the voluntariness of a plea by reviewing the relevant circumstances surrounding its acceptance. State v. Williams, 117 Wn. App. 390, 398, 71 P.3d 686 (2003). Where a defendant completes a written plea statement and admits to reading, understanding, and signing it, a strong presumption arises that the plea was voluntary. State v. Smith, 134 Wn.2d 849, 852, 953 P.2 810 (1998). Where the trial court has also inquired into the voluntariness of the plea on the record, "'the presumption of voluntariness is well nigh irrefutable.'" State v. Davis, 125 Wn. App. 59, 68, 104 P.3d 11 (2004) (quoting State v. Perez, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982)).

Once a plea has been accepted and these safeguards properly employed, a defendant carries a "demanding" burden when seeking to withdraw a guilty plea. State v. DeClue, 157 Wn. App. 787, 792, 239 P.3d 377 (2010). That burden is especially onerous where there are other reasons for pleading guilty, such as a generous plea bargain. State v. Frederick, 100 Wn.2d 550, 558, 674 P.2d 136 (1983), overruled on other grounds by Thompson v. Dep't of Licensing, 138 Wn.2d 783, 982 P.2d 601 (1999).

As described above, the trial court engaged in a colloquy with Sok to ensure that he understood the rights he was waiving by entering into the plea agreement. Sok's attorney also explained to the court that he had also ensured that Sok read and understood the terms of the plea agreement.

Sok first states that the amount of bail and the fact that he was in custody were coercive and should render his plea involuntary. However, a plea of guilty is not involuntary where the decision is a calculated move by the defendant to avoid what he considers to be a worse fate. State v. Ridgley, 28 Wn. App. 351, 358, 623 P.2d 717 (1981) (upholding a plea agreement as voluntary even where defendant told the court he was not guilty but he believed a jury would find him guilty based on the evidence).

Sok next argues that his son's cancer diagnosis and treatment coerced him into entering a guilty plea to ensure his quick release from jail. However, the fact that a family member is ill is not inherently coercive. The Washington State Supreme Court has previously held that a guilty plea was voluntary even where a defendant asserted that he was "coerced to plead guilty by his wife's threat to commit suicide if the case went to trial." State v. Osborne, 102 Wn.2d 87, 684 P.2d 683 (1984).

In the instant case, the State offered Sok a plea deal that, if followed by the court, would allow him to be released from jail immediately. While Sok has shown that he chose to accept the plea to avoid being away from his son, that choice does not establish that he entered the plea involuntarily.

No Contact Order

Sok next challenges the imposition of a no-contact order for a period of 10 years. The no-contact order imposed on February 14, 2022 is listed in the judgment and sentence as ending on February 14, 2032. Sok argues that because his term of confinement was credited for time served prior to pleading

guilty and being sentenced, the same should apply to the no-contact order. Sok argues that he was in custody beginning on December 9, 2021,[1] therefore the no-contact order is only permitted to extend to December 9, 2031.

Where, as here, a "condition of the sentence restricts the defendant's ability to have contact with the victim . . . an order issued pursuant to this section in conjunction with a felony sentence or juvenile disposition remains in effect for a fixed period of time determined by the court, which may not exceed the adult maximum sentence established in RCW 9A.20.021." RCW 10.99.050(1), (2)(d). This sentence is based on Sok's conviction for a Class B felony, punishable by 10 years' confinement. RCW 9A.20.021(b). As a result, the trial court was authorized to impose the no-contact order for 10 years, beginning on the date of sentencing, February 14, 2022. See State v. Armendariz, 160 Wn.2d 106, 108, 156 P.3d 201 (2007).

Sok makes an argument identical to that recently addressed and rejected by this court. See State v. Smalley, No. 84638-8-I, slip op. (Wash. Ct. App. Jan. 17, 2023), https://www.courts.wa.gov/opinions/pdf/846388.pdf. In Smalley, this Court held that the trial court was not required to factor any credit the defendant received for time served into the calculation of the length of the no-contact order. Smalley, slip op. at 5. We explained that while RCW 10.99.050(2)(d) does limit a no-contact order alongside a felony sentence to "not exceed the adult maximum sentence," prohibiting contact with the victim may be enforced after completion of

---

[1] The date of confinement listed in appellant's brief appears to be an error. Although the assault occurred on December 9, 2021, the record reflects that Sok was not arrested and placed in custody until December 16, 2021.

the defendant's sentence. RCW 9.94A.637(6).

This court has also previously noted that a trial court "may impose a no-contact order for the maximum term of a conviction, even extending beyond community custody." State v. Navarro, 188 Wn. App. 550, 556, 354 P.3d 22 (2015) (citing Armendariz, 160 Wn.2d at 112).

Moreover, the statute requiring courts to account for time served in calculating a sentence on its face only applies to *confinement*. RCW 9.94A.505(6) ("The sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced.")

The trial court did not err in imposing a no-contact order that began on the day of sentencing.

Excessive Fines

Sok next asserts that the imposition of the mandatory victim penalty assessment violated the excessive fines clause under both the United States and Washington State constitutions as a result of his indigent status.

The excessive fines clause of the United States Constitution provides "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Washington State constitution provides that "excessive bail should not be required, excessive fines imposed, nor cruel punishment inflicted." WASH. CONST. art. XIV.

RCW 7.68.035(1)(a) provides

"When any person is found guilty in any superior court of having committed a crime . . . there shall be imposed by the court

upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor."

The Eighth Amendment only limits the government's power to impose fines as "'punishment for some offense.'" City of Seattle v. Long, 198 Wn.2d 136, 159, 493 P.2d 94 (2021) (internal quotation marks omitted) (quoting Austin v. United States, 509 U.S. 602, 609-10, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993)). In order to evaluate whether a fine is "excessive," it must first be found to be at least "partially punitive." Id. at 163 (citing Timbs v. Indiana, _ U.S. _, 139 S. Ct. 682, 689, 203 L. Ed. 2d 11 (2019)). This court has previously held that the crime victim penalty assessment is not punitive in nature. State v. Mathers, 193 Wn. App. 913, 920, 376 P.3d 1163 (2016).

More recently, this court considered and rejected the same excessive fines argument raised by Sok. State v. Tatum, 23 Wn. App. 2d 123, 130, 514 P.3d 763 (2022) (citing State v. Curry, 118 Wn.2d 911, 829 P.2d 166 (1992)). The Curry court held that "the victim penalty assessment is neither unconstitutional on its face nor as applied to indigent defendants." Curry, 118 Wn.2d at 169. We noted that though the Washington Supreme Court's reasoning was vague, its "concern was the constitutionality of the statute in light of indigent defendants' potential inability to pay." Tatum, 23 Wn. App. 2d at 130 (citing Curry, 118 Wn.2d at 917). As we explained in Tatum, "we are bound in the face of this holding from our state Supreme Court to conclude that the VPA is constitutional as applied." Id. at 130 (citing State v. Gore, 101 Wn.2d 481, 487,

681 P.2d 227 (1984) (Supreme Court's decision on issue of state law binds all lower courts until that court reconsiders)).

Accordingly, we hold that the crime victim penalty does not constitute a penalty for the purposes of the excessive fines clause.

Legal Financial Obligations

Sok, relying on a copy of a letter from the Snohomish County Clerk's Office, which is not in the record, contends that the clerk's office improperly added $100 in calculating his legal financial obligations after sentencing, bringing the total to $700, rather than the $600 imposed by the court.[2]

We may not consider facts outside the record on direct review. State v. Robinson, 171 Wn.2d 292, 314, 253 P.3d 84 (2011) (citing State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)). The proper mechanism for raising claims of error resting on facts outside the record is a personal restraint petition. Id. at 314-15. We decline to review this issue.

CONCLUSION

We affirm.

_____
Coburn, J.

WE CONCUR:

_____          _____
                                  Dwyer, J.

---

[2] Under former RCW 36.18.016(29) (2021), court clerks were permitted "to impose an annual fee of up to one hundred dollars" for the collection of an adult offender's unpaid legal financial obligations. This provision was amended in June 2022, approximately four months after Sok's sentence, permitting the imposition of only $20 for this purpose. RCW 36.18.016(29).