# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57361-0-II |
| Respondent, | Consolidated with |
| v. | |
| JULIUS AYOMOLA OWOLABI, | |
| Appellant. | |
| | |
| In the Matter of the Personal Restraint of: | No. 58555-3-II |
| JULIUS AYOMOLA OWOLABI, | UNPUBLISHED OPINION |
| Petitioner. | |

PRICE, J. — Julius Owolabi appeals his judgment and sentence resulting from his guilty plea.  Owolabi argues that some of his community custody conditions are not sufficiently related to his crime.  He also challenges the duration of the sexual assault no-contact orders imposed on him, and he requests we remand for the superior court to strike the imposition of a $500 crime victim penalty assessment (VPA).  Owolabi also brings multiple claims in a statement of additional grounds (SAG) and a separate personal restraint petition (PRP) that was consolidated with his direct appeal.

We affirm the imposition of the community custody conditions, but we remand for the superior court to correct the sexual assault no-contact orders and to strike the VPA.  We further determine Owolabi's SAG claims lack merit and dismiss his PRP.

FACTS

I. BACKGROUND

In 2020, law enforcement received information that Owolabi had been exhibiting grooming behaviors toward local girls. Statements made to officers indicated Owolabi would give girls, ages 14 to 17, marijuana, alcohol, and money in exchange for talking to him and sending nude photographs and videos of themselves. Law enforcement began investigating Owolabi and surveilling his house.

In August 2020, officers followed Owolabi while he was driving. Owolabi drove to an ATM and a marijuana storefront, eventually picking up two girls who were waiting in a nearby parking lot. Owolabi continued driving with the girls in the car, but almost caused an accident by running another car off the road. At that point, law enforcement pulled Owolabi over.

The officers spoke with the two girls who were in the car, Z.W. and O.E.M. Both girls were younger than 16 years old. Z.W. stated that Owolabi had given her marijuana, alcohol, and money on multiple occasions. Owolabi had requested nude photographs of Z.W., and she had sent him "a few." Clerk's Papers (CP) at 9. About a week prior, Owolabi had picked up Z.W. and O.E.M. and taken them back to his house. The three of them had smoked marijuana, and Owolabi had taken Z.W. into his bedroom and raped her. Owolabi had then taken O.E.M. into his bedroom and raped her as well. Owolabi had given each girl $80 before taking them back home. O.E.M. confirmed Z.W.'s statements.

Owolabi was arrested. He was initially charged with two counts of third degree rape of a child and two counts of commercial sex abuse of a minor, one count each for both Z.W. and O.E.M.

But as law enforcement continued to investigate Owolabi, they uncovered at least 11 other girls with whom Owolabi had contact, leading to additional charges.

II.  OWOLABI'S GUILTY PLEA

About two years later, Owolabi pleaded guilty to four charges in an amended information. The charges included the following "Counts": (1) third degree rape of a child for Z.W., (2) third degree rape of a child for O.E.M., (3) first degree possession of depictions of a minor engaged in sexually explicit conduct, and (4) communication with a minor for immoral purposes for 11 other minor girls.  The amended information did not state a specific victim or image that amounted to the crime for Count 3 (first degree depiction of a minor engaged in sexually explicit conduct).  CP at 42.  As to Count 3, the amended information stated,

> JULIUS AYOMOLA OWOLABI, in the County of Clark, State of Washington, on or about or between January 6, 2018, and January 5, 2020, did knowingly possess visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011 (4) (a) through (e), to wit: actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals; (b) penetration of the vagina or rectum by any object; (c) masturbation; (d) sadomasochistic abuse; and/or (e) defecation or urination for the purpose of sexual stimulation of the viewer; contrary to [RCW] 9.68A.070(1).

CP at 42.

As part of his plea, Owolabi signed a settlement agreement.  In exchange for limiting the number of his convictions and including convictions with lower standard ranges, the State and Owolabi stipulated that the recommended sentence would be an exceptional upward sentence. Whereas Owolabi was previously charged with 24 counts, with the longest standard range sentence being 120 to 120 months for sexual exploitation of a minor, the longest standard range of the

amended charges was 46-61 months for Count 3, first degree depiction of a minor engaged in sexually explicit conduct. Thus, the settlement agreement provided that the State would recommend an exceptional sentence of 72 months. The settlement agreement also specified that community custody terms for Counts 1, 2, and 3 would be 36 months, as required by law. *See* RCW 9.94A.701(1)(a).

The settlement agreement included Owolabi's stipulation to specific community custody conditions listed in an attached "Appendix A." Appendix A detailed written community custody conditions, including the following:

> 6. [] You shall submit to urine, breath, PBT/BAC, or other monitoring whenever requested to do so by your community corrections officer to monitor compliance with abstention from alcohol and nonprescribed controlled substances.
>
> . . . .
>
> 8. [] You shall not be in any place where alcoholic beverages are the primary sale item.
>
> 9. You shall . . . obtain an evaluation for . . . chemical dependency . . . and shall attend and successfully complete all phases of any recommended treatment as established by the community corrections officers and/or treatment facility. . . .
>
> . . . .
>
> 13. You shall not possess, use, access, or view any sexually explicit material as defined by RCW 9.68.130(2) or erotic materials as defined by RCW 9.68.050(2) or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by [Department of Corrections (DOC)] and your sexual deviancy treatment provider.
>
> . . . .
>
> 15. You shall not enter into a dating relationship with another person who has minor children in their care or custody without prior approval of DOC and your sexual deviancy treatment provider.

4

CP at 64-65.

Owolabi's plea hearing took place on July 11, 2022. As part of its colloquy with Owolabi, the superior court ensured that Owolabi understood that even though the State recommended a specific sentence, the superior court could depart from that recommendation. Additionally, Owolabi stated that the State's supplied factual bases for his convictions were "factually true and accurate." Verbatim Rep. of Proc. (VRP) at 100. At the end of the hearing, the superior court accepted Owolabi's plea, finding that it was made knowingly, intelligently, and voluntarily, and convicted him of the amended charges.

III. JUDGMENT AND SENTENCE

The next month, the superior court sentenced Owolabi and entered its judgment and sentence on August 29, 2022. The judgment and sentence included a statement that Owolabi and the State stipulated that justice was best served with an exceptional sentence. But despite the joint recommendation for an exceptional sentence of 72 months, the superior court imposed an exceptional upward sentence of 90 months. The judgment and sentence further stated that Owolabi would receive credit for his time served before his plea and sentencing, which would be calculated later by the DOC. The judgment and sentence also incorporated the community custody conditions included in Appendix A and imposed a community custody term of 36 months. Finally, the superior court determined that Owolabi was indigent but imposed a $500 VPA and other legal financial obligations (LFOs).

The superior court also imposed no-contact orders prohibiting Owolabi from contacting his victims and separate sexual assault no-contact orders for the maximum term allowed.[1] The no-contact orders that were included in the judgment and sentence were to last 10 years from the date of Owolabi's guilty plea and therefore were set to expire on July 11, 2032. The separate sexual assault no-contact orders were entered the same day that Owolabi pleaded guilty, on July 11, 2022, and all also included an expiration date of July 11, 2032.

Owolabi appeals from his judgment and sentence.

IV. PERSONAL RESTRAINT PETITION

Separate from his direct appeal, Owolabi also filed a timely pro se PRP, with various attached documents. This court consolidated Owolabi's PRP with his direct appeal.

We first address Owolabi's claims in his direct appeal and then address his PRP.

ANALYSIS

I. COMMUNITY CUSTODY CONDITIONS

In his direct appeal, Owolabi challenges the imposition of several community custody conditions, arguing that they are not sufficiently related to his crimes. Specifically, he challenges (1) the requirement that he complete chemical dependency evaluations (and treatment if necessary), (2) the requirement that he submit to breath and urine testing at DOC's discretion, and

---

[1] The judgment and sentence provided that additional "sexual assault protection orders" would be entered. That language is consistent with former RCW 7.90.150 (2006), which was recodified as RCW 9A.44.210, effective July 1, 2022, approximately two months before Owolabi's judgment and sentence was entered. Following recodification, "sexual assault protection orders" are now referred to as "sexual assault no-contact orders." Because the new label was effective prior to the date Owolabi's judgment and sentence was entered, we refer to orders in this case as "sexual assault no-contact orders."

(3) the requirement that he not be in any place where alcohol is the primary item of sale. Owolabi asks that we strike these community custody conditions. We decline.

A sentencing court may impose crime-related conditions. Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, "the court may order an offender to . . . [c]omply with any crime-related prohibitions" in its discretion "[a]s part of any term of community custody." RCW 9.94A.703(3)(f); *see also* RCW 9.94A.505(9) (granting the court authority to impose crime-related conditions "[a]s a part of any sentence").

When a defendant does not challenge the crime-relatedness of their community custody conditions at sentencing, any later challenge can be considered waived. *State v. Peters*, 10 Wn. App. 2d 574, 591, 455 P.3d 141 (2019). "[W]here there is no objection to community custody conditions in the trial court, there is no reason for the parties or the court to create a record on the relationship between the crime and the conditions imposed," and we may therefore decline to review the conditions. *Id.* This is especially true when the defendant has agreed to the challenged community custody condition. *State v. Casimiro*, 8 Wn. App. 2d 245, 249, 438 P.3d 137, *review denied*, 193 Wn.2d 1029 (2019).

Here, Owolabi expressly agreed to the community custody conditions as part of his plea deal. The signed settlement agreement included that Owolabi "stipulate[d] to the conditions set forth in the attached 'Appendix A' " and attached the appendix with all of the community custody conditions that Owolabi now challenges. CP at 62. Because Owolabi agreed to the community custody conditions and did not challenge their crime relatedness to the superior court, we decline to review them—Owolabi's challenge has been waived.

II. SEXUAL ASSAULT NO-CONTACT ORDERS

Owolabi argues the trial court erred when it entered sexual assault no-contact orders that would expire 10 years from the date of Owolabi's conviction. He asserts the correct term should expire two years after the date of his release from confinement. The State concedes the terms of the sexual assault no-contact orders were improper. We accept the State's concession and remand for correction of the sexual assault no-contact orders.

When defendants are guilty of a sex offense, statutes authorize the entry of a sexual assault no-contact order preventing the defendant from contacting his victims. RCW 9A.44.210(6)(a). "A final sexual assault no-contact order entered in conjunction with a criminal prosecution shall remain in effect for a period of two years following the expiration of any sentence of imprisonment and subsequent period of community supervision, conditional release, probation, or parole." RCW 9A.44.210(6)(c); *State v. Navarro*, 188 Wn. App. 550, 555, 354 P.3d 22 (2015), *review denied*, 184 Wn.2d 1031 (2016). One of the purposes of a sexual assault no-contact order is to protect a victim for two years after the defendant's restraint ends. *Id.* The sexual assault no-contact order "should not provide a fixed expiration date" because "an offender's actual release date is unknowable at the time of sentencing" when the offender is entitled to credit for time served before sentencing. *Id.* at 555-56.

Here, the superior court set the sexual assault no-contact orders to expire on a specific date, 10 years after the date of the entry of Owolabi's guilty plea. But because the statute,

8

RCW 9A.44.210, requires expiration of the sexual assault no-contact orders precisely two years after the termination of total confinement, the sexual assault no-contact orders' duration here was contrary to the statute's requirements. *See Navarro*, 188 Wn. App. at 555-56. Thus, we remand for correction of the sexual assault no-contact orders.

III.  VICTIM PENALTY ASSESSMENT

Owolabi next argues that the VPA should be stricken because the VPA is no longer authorized by statute. The State has no objection to remanding for the superior court to strike the VPA. We agree the VPA should be stricken.

Effective July 1, 2023, the VPA is no longer authorized for indigent defendants. LAWS OF 2023, ch. 449 § 1; RCW 7.68.035(4). And changes to the legislation governing LFOs apply to cases on direct appeal when the change was enacted. *State v. Matamua*, 28 Wn. App. 2d 859, 878-79, 539 P.3d 28 (2023), *review denied*, __ P.3d __ (May 08, 2024). Accordingly, we remand to the superior court to strike the VPA.

IV.  SAG CLAIMS

In his SAG, Owolabi makes 14 additional claims. Owolabi requests that we vacate his convictions and dismiss his case.

As an initial matter, eight of Owolabi's claims related to prosecutorial or governmental misconduct or other constitutional issues based on events that occurred before he entered his guilty

plea.[2] But a " 'guilty plea waives or renders irrelevant all constitutional violations that occurred before the guilty plea, except those related to the circumstances of the plea or to the government's legal power to prosecute regardless of factual guilt.' " *State v. Wilson*, 162 Wn. App. 409, 415-16, 253 P.3d 1143 (2011) (internal quotation marks omitted) (quoting *State v. Brandenburg*, 153 Wn. App. 944, 948, 223 P.3d 1259 (2009)). Because those arguments are waived, Owolabi's claims related to alleged constitutional issues before his plea fail.

We now address each of Owolabi's six remaining claims.

## A. SAG CLAIM 8: ESSENTIAL ELEMENTS OF COUNT 3 IN THE INFORMATION

Owolabi claims that the amended information did not include all of the essential elements for Count 3, first degree possession of depictions of a minor engaged in sexually explicit conduct. Owolabi argues the document was defective because Count 3 did not state what materials he possessed that amounted to the crime and because it did not identify by name the subject of the depiction.

The adequacy of a charging document is determined by the standards set forth in the Sixth Amendment to the United States Constitution, article I, section 22 of the Washington Constitution,

---

[2] SAG claim 1 challenges the traffic stop on the day of Owolabi's arrest as pretextual. SAG claims 2, 3, and 4 allege the prosecutor committed prosecutorial misconduct by making false statements to persuade the superior court to grant a five-month continuance (claim 2), amending Owolabi's charges the same day as a bail reduction hearing (claim 3), and disclosing that Owolabi tested negative for COVID-19 (claim 4). SAG claims 5 and 6 are related to alleged violations of discovery rules that Owolabi claims were government misconduct for late discovery submissions (claim 5) and a violation of due process for not revealing the identity of a witness (claim 6). SAG claim 7 asserts governmental misconduct occurred because the superior court violated the Code of Judicial Conduct when it did not sufficiently inquire about Owolabi's request for new counsel before denying the request. SAG claim 14 challenges a search that law enforcement performed on Owolabi's cell phone.

and Superior Court Criminal Rule (CrR) 2.1. Under the Sixth Amendment, an accused person in a criminal prosecution "shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. CONST. amend VI. Article I, section 22 of the state constitution similarly authorizes "the right . . . to demand the nature and cause of the accusation against him, to have a copy thereof." CrR 2.1(a)(1) specifies that an information "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

Together, these standards have led to the development of the "essential elements" rule. *State v. Canela*, 199 Wn.2d 321, 328, 505 P.3d 1166 (2022). "The rule establishes that, to be constitutionally adequate, a charging document must contain all essential elements of the charged crime." *Id.* "Essential elements are those elements of a crime 'necessary to establish the very illegality of the behavior charged.' " *Id.* (internal quotation marks omitted) (quoting *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013)). "The main purpose of the essential elements rule 'is to give notice to an accused of the nature of the crime that he or she must be prepared to defend against.' " *Id.* (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991).

To commit first degree possession of depictions of a minor engaged in sexually explicit conduct, "a person . . . knowingly possesses a visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4) (a) through (e)." RCW 9.68A.070(1)(a). Items (a) through (e) of RCW 9.68A.011 state that "sexually explicit conduct" includes actual or simulated

    (a) Sexual intercourse . . .
    (b) Penetration of the vagina or rectum by any object;
    (c) Masturbation;

(d) Sadomasochistic abuse;

(e) Defecation or urination for the purpose of sexual stimulation of the viewer[.]

RCW 9.68A.011(4).

Here, relating to Count 3, the amended information stated the following:

JULIUS AYOMOLA OWOLABI, in the County of Clark, State of Washington, on or about or between January 6, 2018, and January 5, 2020, did knowingly possess visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011 (4) (a) through (e), to wit: actual or simulated (a) sexual intercourse . . . (b) penetration of the vagina or rectum by any object; (c) masturbation; (d) sadomasochistic abuse; and/or (e) defecation or urination for the purpose of sexual stimulation of the viewer; contrary to [RCW] 9.68A.070(1).

CP at 42. Comparing the essential elements of the crime with the amended information shows that all of the essential elements of the charged crime were included in the amended information and, consequently, Owolabi was sufficiently informed of the nature of the crime to allow him to prepare his defense. Accordingly, the amended information was constitutionally adequate. Owolabi's claim that the information did not include the essential elements for Count 3 fails.

B. SAG CLAIMS 9 & 13: EXCEPTIONAL UPWARD SENTENCE

Owolabi challenges his exceptional sentence in SAG claims 9 and 13.

In SAG claim 13, Owolabi claims that his right to due process was violated when the superior court did not make findings that aggravating factors were a substantial and compelling reason to impose Owolabi's exceptional sentence. However, when the parties stipulate to an exceptional sentence, the superior court "may impose an aggravated exceptional sentence without a finding of fact by a jury." RCW 9.94A.535(2). Because Owolabi stipulated that there was a basis for an exceptional sentence, his due process right was not violated when the superior court did not make additional findings of an aggravating factor to support the exceptional sentence.

12

In SAG claim 9, Owolabi claims that the superior court's departure from the joint recommendation of 72 months was erroneous because if the parties agree to a specific exceptional sentence, the superior court has no authority to impose a different exceptional sentence. However, under RCW 9.94A.431(2), the superior court is not bound by any recommendations contained in an allowed plea agreement. Accordingly, when Owolabi stipulated that there was a basis to impose an exceptional sentence, the superior court had the authority to impose any exceptional sentence it determined to be appropriate—so long as it was not excessive (which Owolabi does not claim). *See State v. Scott*, 72 Wn. App. 207, 219, 866 P.2d 1258 (1993) ("Once the sentencing court finds substantial and compelling reasons for imposing an exceptional sentence, the court is permitted to use its discretion to determine the precise length of the sentence."), *aff'd*, 126 Wn.2d 388 (1995).

## C. SAG CLAIM 10: CHALLENGE TO COMMUNITY CUSTODY CONDITIONS

Owolabi challenges the imposition of several community custody conditions. First, Owolabi claims that the prohibition on consuming alcohol without DOC approval was not crime related. Because we address this argument for the condition above, we do not further address it here.

Second, Owolabi challenges the condition prohibiting him from possessing materials of any person who is engaging in sexually explicit conduct. He argues that this condition is overly inclusive because it prohibits him from viewing or possessing adult pornography, which was not implicated in his convictions. But this challenge fails for the same reason Owolabi's other crime-relatedness challenges fail; his express agreement to the condition waives this challenge.

Third, Owolabi claims that the condition prohibiting him from entering into dating relationships with persons who have minor children in their care is unconstitutionally vague because the term "dating relationship" is not sufficiently specific.

As noted above, whether a condition is crime related is a question of the superior court's statutory sentencing authority and it can be waived by the agreement of the defendant. However, whether a condition is sufficiently specific is a constitutional issue and may be challenged by the defendant on appeal, even if they agreed at sentencing. *See State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018); *State v. Sanchez Valencia*, 169 Wn.2d 782, 791, 239 P.3d 1059 (2010). Therefore, unlike his other challenges to his community custody conditions, Owolabi's claim that the term "dating relationship" is not sufficiently specific is a constitutional challenge that we must review.

Due process requires that individuals have " 'fair warning' " of what constitutes prohibited conduct. *Sanchez Valencia*, 169 Wn.2d at 791 (quoting *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008)). Unlike statutes or ordinances enacted by the legislature, a community custody condition is not presumptively constitutional. *Bahl*, 164 Wn.2d at 753.

We review community custody conditions for an abuse of discretion. *State v. Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021). Sentencing courts have broad discretion to impose community custody conditions. *State v. Geyer*, 19 Wn. App. 2d 321, 327, 496 P.3d 322 (2021). Thus, we will only overturn a condition when it is manifestly unreasonable. *State v. Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). A condition is manifestly unreasonable when it is unconstitutional. *Id.*

We use a two-prong analysis to determine whether a condition is sufficiently specific and not unconstitutionally vague, and both prongs must be satisfied. *See State v. Irwin*, 191 Wn. App. 644, 652-53, 364 P.3d 830 (2015). A condition is not unconstitutionally vague if (1) it defines the prohibited conduct so an ordinary person can understand what the condition means, and (2) it provides ascertainable standards to protect against arbitrary enforcement. *Id.* To satisfy the first prong of the vagueness inquiry, "the proscribed conduct is [required to be] sufficiently definite in the eyes of an ordinary person." *Nguyen*, 191 Wn.2d at 681. The second prong is only satisfied when there are benchmarks guiding the enforcement of the condition. *Johnson*, 197 Wn.2d at 748. A community custody condition is unconstitutionally vague when enforcement relies on a subjective standard. *Padilla*, 190 Wn.2d at 680.

Courts have previously considered whether the term "dating relationship" is unconstitutionally vague and have determined that it is not. *Nguyen*, 191 Wn.2d at 682-83. In *Nguyen*, our Supreme Court reasoned that the ordinary person will be able to distinguish a dating relationship from other types of relationships. *Id.* And there are standards to determine the meaning of a "dating relationship" within Washington's statutes to protect against arbitrary enforcement:

> "Dating relationship" means a social relationship of a romantic nature. Factors that the court may consider in making this determination include: (a) The length of time the relationship has existed; (b) the nature of the relationship; and (c) the frequency of interaction between the parties.

RCW 7.105.010(8); *Nguyen*, 191 Wn.2d at 682-83.

Here, the community custody condition Owolabi challenges states,

15

You shall not enter into a dating relationship with another person who has minor children in their care or custody without prior approval of DOC and your sexual deviancy treatment provider.

CP at 65. For the same reason previous courts have determined that the term "dating relationship" is not unconstitutionally vague, so do we. An ordinary person will be able to identify a dating relationship and the statutory definition of the term will protect against arbitrary enforcement. Accordingly, Owolabi's claims related to his community custody conditions all fail.

D. SAG Claim 11: 10-Year No-Contact Order

In this claim, Owolabi challenges the duration of his 10-year sexual assault no-contact order for the victims. But, because we have already concluded that these sexual assault no-contact orders should be corrected on remand, we do not further consider this claim.

E. SAG Claim 12: LFO Challenge

Owolabi claims an error related to money taken out of his "spendable account in prison" and his LFOs. Owolabi states that the superior court found him indigent and appears to argue that he therefore should not have LFOs imposed against him. Owolabi does not specify what LFOs he challenges because of his indigency status.

As explained above, we remand for the superior court to strike the imposition of the VPA, which is an LFO. To the extent Owolabi is referring to the VPA in this claim, we need not further address it. But to the extent he is referring to any other LFOs and his "spendable account," we do not have any information about LFO withdrawals from Owolabi's spendable account in our record. Because we do not have the required documents to determine the merits of any challenge to his LFO withdrawals in our record, this claim fails. *See State v. Alvarado*, 164 Wn.2d 556, 569,

16

192 P.3d 345 (2008) (the court "cannot review" claims that rely on evidence outside of the appellate record).

Thus, with the exception of SAG claim 11, which we have addressed above, Owolabi's SAG claims do not have merit.

## V. PRP CLAIMS

Shifting to Owolabi's PRP, he makes 12 additional, somewhat related, claims that he argues should result in a reversal of his convictions.

"[C]ollateral attacks on convictions made through a PRP are allowed only in 'extraordinary' circumstances." *In re Pers. Restraint of Kennedy*, 200 Wn.2d 1, 12, 513 P.3d 769 (2022) (quoting *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011)). Given the importance of the finality of judgments and sentences, petitioners face a high bar and it must be overcome before we will disturb a settled judgment. *Id.* In a PRP, a petitioner's claim must make a showing that their restraint is unlawful. RAP 16.4(c). If a PRP is clearly frivolous, this court will dismiss it. RAP 16.8.1(b).

As explained above, a valid plea waives or renders irrelevant all constitutional violations that occurred before the plea is entered, except those related to the circumstances of the plea or the government's legal power to prosecute regardless of factual guilt. *In re Pers. Restraint of Reise*, 146 Wn. App. 772, 782, 192 P.3d 949 (2008). Additionally, CrR 4.2(d) requires that a court not enter a judgment upon a plea of guilty "unless it is satisfied that there is a factual basis for the plea." *State v. Osborne*, 102 Wn.2d 87, 95-96, 684 P.2d 683 (1984). Such factual support can

come from the defendant's admissions. *Id.* Challenges to the factual information that led to the

defendant's guilty plea may therefore be considered waived. *See id.*

Here, each of Owolabi's PRP claims either relate to constitutional errors outside the scope

of his plea or the government's ability to prosecute, challenge the evidence that led to Owolabi

pleading guilty, or fail to identify why Owolabi's claims make his restraint unlawful.[3] Each of

Owolabi's claims is therefore frivolous and we dismiss his PRP.[4]

---

[3] PRP claims 1, 2, 5, 6, 7, 8, and 10 are challenges to the evidence that led to Owolabi's convictions or assertions that there was insufficient evidence to support his charges. The evidence-related challenges are frivolous because Owolabi pleaded guilty and admitted that the factual support for his convictions was "true and accurate," thereby waiving factual challenges. VRP at 100; *see Osborne*, 102 Wn.2d at 95-96.

PRP claims 3, 4, and 6 assert prosecutorial misconduct for events that occurred prior to Owolabi's entry of his guilty plea. PRP claim 12 states that the prosecution committed prosecutorial vindictiveness for adding charges to a former information (not the information Owolabi pleaded guilty to) allegedly in retaliation for Owolabi requesting copies of evidentiary items. PRP claim 11 asserts government misconduct when the prosecutor offered a former plea deal with allegedly false charges. The challenges to constitutional errors are frivolous because they relate to events that occurred before Owolabi's guilty plea and are waived. *See In re Reise*, 146 Wn. App. at 782.

The only PRP claim not related to a waived factual or constitutional issue is PRP claim 9. In that claim, Owolabi asserts his counsel violated the Rules of Professional Conduct because counsel made false and misleading statements to the superior court. This claim fails to identify a reason why Owolabi's restraint is unlawful and is therefore frivolous. RAP 16.4(c).

[4] When an initiation petition is filed by a petitioner, the chief judge of this court will conduct a preliminary review. *See* RAP 16.4, 16.14(a). The chief judge will dismiss the petition if it is frivolous; when the petition is not clearly frivolous, it is decided by a panel of judges. RAP 16.8.1(b); 16.14(c). In this case, Owolabi moved to consolidate his PRP with his direct appeal, and that motion was granted. But a preliminary review to determine whether his petition was frivolous did not occur. We have therefore conducted that review. (Although Owolabi requests counsel for his PRP, because his petition is frivolous we do not appoint counsel. *See State v. Devlin*, 164 Wn. App. 516, 525, 267 P.3d 369 (2011) (stating that "a petitioner is not entitled to appointed counsel in . . . [a PRP] unless the court determines that the petition is not frivolous"), *review denied*, 174 Wn.2d 1008 (2012)).

No. 57361-0-II
(Consol. with 58555-3-II)

CONCLUSION

We remand for the superior court to correct Owolabi's sexual assault no-contact orders and

to strike the imposition of Owolabi's VPA. We otherwise affirm the superior court and dismiss

Owolabi's PRP.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

LEE, J.

19